*794 |,ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.*
This disciplinary matter arises from formal charges fried by the Office of Disciplinary Counsel (“ODC”) against respondent, John T. Bennett, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
The underlying facts of this matter are not in dispute, having been stipulated to by the parties.
Between November 1, 2006 and March 30, 2007, Theresa Desselle Adducci worked as respondent’s paralegal. As part of her regular duties, Ms. Adducci assisted in preparing client accountings related to the disbursement of personal injury settlements.
The accounting records of respondent’s personal injury eases were primarily kept at and by the Michael Carbo CPA firm in Alexandria. When a personal injury case settled, Ms. Adducci notified the Carbo firm of the settlement amount and requested checks to be used in the settlement disbursement. Respondent supplied *795 the Carbo firm with the preliminary disbursement information, and Ms. Adducci supplied the Carbo firm with any additional information about costs and expenses that were not already reported. The Car-bo firm then prepared the settlement disbursement 12sheets, checks, and settlement accountings and forwarded them to respondent’s office. This procedure was established so the Carbo firm could assist respondent by preparing the initial settlement documents, preparing settlement checks for respondent’s signature, and providing material to respondent for review and disbursement of settlement proceeds.
By the nature of her duties, Ms. Adducci had access to respondent’s trust and operating accounts. However, she did not have signature authority on these accounts. She used her assigned tasks to gain access to the accounts for her own personal benefit.[1]
Between November 1, 2006 and March 30, 2007, respondent was seriously ill. While he received medical care and recuperated, he was out of the office and/or he spent limited time in the office. During this time, respondent failed to properly supervise Ms. Adducci’s access to his trust and opei’ating accounts. As a result, he did not detect her actions, allowing her to commingle, convert, and/or misappropriate funds from the accounts. Through her unauthorized acts, Ms. Adducci took certain client funds and funds belonging to respondent, converting said funds from respondent’s trust and operating accounts. Respondent reported Ms. Adducci’s conduct to the Avoyelles Parish District Attorney at the end of March 2007.[2]
Respondent identified all clients whose funds may have been taken by Ms. Adduc-ci. He made those clients whole using his personal funds, and no client was permanently deprived of money or property. In particular, Ms. Adducci’s actions affected three clients as follows:
| ;iAn $833.33 settlement disbursement check made payable to Eugene Goods was returned to respondent’s office because of an incorrect address. Ms. Adducci voided the check and had another check in that amount issued to respondent as “fee.” She then forged respondent’s signature, cashed the check, and kept the funds. On October 2, 2007, respondent paid $833.33 in restitution to Mr. Goods.
Rudolph and Rita Ponthieux’s cases settled for a combined total of $43,977.91. Respondent’s expenses totaled $4,575.08. Ms. Adducci requested two checks be issued from the settlement amount for reimbursement of the expenses — one check in the amount of $3,527.23 and another check in the amount of $3,527.22, totaling $7,054.45. She deposited the $3,527.22 check into respondent’s operating account, but she forged his signature on the other check, cashed it, and kept the funds. Ms. Adducci converted $1,047.85 due to respondent and converted $2,479.37 due to Mr. and Mrs. Ponthieux. On January 10, 2008, respondent made restitution to them from his personal funds in the amount of $2,691.97.
Charles Spataro’s case settled for $225,000. After deductions from the settlement, Mr. Spataro should have received *796 $138,552.79. Instead, he received $15,000 less than that amount. Ms. Adducci wrote $14,615.66 in unauthorized checks from respondent’s trust account and kept the funds. On October 19, 2007, respondent made restitution to Mr. Spataro from his personal funds in the amount of $15,000.
DISCIPLINARY PROCEEDINGS
In August 2008, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a)(b)(e) (safekeeping property of clients or third persons), 5.3 (failure to | 4 properly supervise a non-lawyer assistant), and 8.4(a) (violation of the Rules of Professional Conduct). Respondent answered the formal charges, arguing that the charges against him should be dismissed based on the evidence of Ms. Ad-ducci’s wrongdoing.

Hearing Committee Report

This matter proceeded to a formal hearing on the merits. Following the hearing, the hearing committee filed its report with the disciplinary board. In addition to the stipulated facts, the committee made the following factual findings based on the testimony and evidence presented at the hearing:
1.The accounting records kept at the Carbo firm included client ledgers for the accounting of each case. Copies of those ledgers were not kept at respondent’s office. The Carbo firm stopped reconciling respondent’s trust account in June 2006. Since the client ledgers were maintained at the Carbo firm, reconciliation of respondent’s trust account could only take place with the documents on file at the Carbo firm. While this situation may have been intended to prevent employee modification of the records, the result was that no one in respondent’s office had a clear record of the accounting for client trust accounts.
2. Details of the settlements were left to communication between respondent’s employees and the Carbo firm’s employees.
3. Respondent’s illness required hospitalization at various times.
4. During a time in 2006 and continuing through March 30, 2007, the evidence shows that Ms. Adducci embezzled a total of $14,615.66, principally by directing issuance of trust account checks to respondent’s office, intercepting those checks, forging respondent’s name, and cashing the checks. One result |aof this method of embezzlement is that, on initial investigation, it was believed that the thefts occurred out of the operating account, rather than the trust account.
5. Mr. Spataro was “shorted” $15,000, either through error or fraud, but his funds remained in respondent’s trust account, apparently to disguise the prior thefts. This transaction did not constitute a theft of client funds, but it did deprive Mr. Spataro of his full funds for a period of time.
6. When respondent learned that Ms. Adducci’s previous employer had accused her of embezzling $100,000, Ms. Adducci denied the accusation. Nevertheless, respondent advised her that she was not to deal with any financial matters in his office. However, he made no effort to restrict Ms. Adducci’s access to settlements. He also did not communicate to the Carbo firm or his own employees that Ms. Adducci was restricted from providing settle *797 ment instructions or requesting the issuance of checks.
7. The bulk of the transactions involving diversion of funds by Ms. Ad-ducci occurred in November and December 2006.
8. All client funds that were converted were restored by respondent on his own volition. No client is shown to have lost any funds.
9. Respondent was negligent in employing Ms. Adducci, continuing her employment after notice of allegations of embezzlement, and allowing her to continue to access his trust account. Respondent was also negligent in failing to properly and reasonably supervise, control, reconcile, and maintain his trust account and in allowing the trust account to be used without proper and reasonable oversight or procedures in place to protect funds belonging to clients and third parties.
IfilO. Respondent’s negligence was serious (greater than mere negligence but not rising to the level of gross negligence), and his failure to properly supervise both Ms. Adducci and his trust account facilitated Ms. Adducci’s ability to embezzle funds.
11. Respondent appears to have been under the mistaken impression that the established system (remote management of the accounting functions and records) created a barrier to employee misconduct. The Carbo firm never considered any of its systems to be theft deterrents.
Based on these facts, the committee determined that respondent violated Rule 5.3 of the Rules of Professional Conduct. The committee further found no direct violation of Rule 1.15; however, his failure to supervise Ms. Adducci caused a technical violation of Rule 1.15. The committee did not address whether respondent violated Rule 8.4(a). After considering the ABA’s Standards for Imposing Lawyer Sanctions and this court’s prior jurisprudence, the committee determined that the baseline sanction is suspension.
With respect to aggravating factors, the committee considered the following: (1) respondent delegated the duty of maintaining the trust account to his accountant, whose systems were not set up to police or prevent employee theft, and (2) respondent allowed an employee with questionable character and financial integrity to have access to his accounts. In mitigation, the committee recognized respondent’s full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings and remorse. The committee also recognized respondent’s medical condition as a mitigating factor but noted that it did not exist during the entire period when the thefts occurred.
17Under these circumstances, the committee recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation. The committee also recommended that the probation be conditioned upon respondent’s attendance at the Louisiana State Bar Association’s Trust Accounting School and the requirement that respondent have a CPA reconcile his trust account and report any irregularities to the ODC. Finally, the committee recommended that any instances of improper accounting or any instances of misappropriation or conversion of trust funds should result in immediate revocation of respondent’s probation and the imposition of a one year and one day suspension from the practice of law.
The ODC filed an objection to the inconsistent nature of the hearing committee’s *798 recommendation. The ODC also objected to the recommended length of probation. Instead, the ODC recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to two years of supervised probation with conditions.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the joint stipulation of facts, the testimony, and/or the documentary evidence submitted in support of the allegations. Therefore, the board found that the factual allegations of the formal charges have been proven by clear and convincing evidence. Based on these facts, the board determined that respondent violated Rule 5.3 of the Rules of Professional Conduct. With respect to Rule 1.15, the board found that the record cannot support a finding that respondent violated the rule because he genuinely believed systems were in place that would [scomply with the rule. The board also determined that respondent violated Rule 8.4(a) through his inattention to basic standards of law office management, which in turn allowed Ms. Adducci to repeatedly steal.
The board further determined that respondent violated duties owed his clients, the legal system, and the legal profession. Respondent acted negligently, evidenced by his failure to conduct simple reviews of client settlement statements and his failure to prevent Ms. Adducci from accessing the trust account finances after learning of allegations of embezzlement. Respondent’s lack of supervision caused harm to his clients, the public, and the legal system. The harm was minimal because respondent made nearly immediate restitution, but the potential for serious harm was present because Ms. Adducci’s conduct was left unchecked for many months. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension because respondent should have known of Ms. Adducci’s embezzlement activities.
The board found the following aggravating factors present: a pattern of misconduct (respondent’s long-term and continual negligence of his duty to supervise Ms. Adducci) and substantial experience in the practice of law (admitted 1972). In mitigation, the board found the following: absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems,[3] timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse.
| ¡After considering this court’s prior jurisprudence involving similar misconduct, the board recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to two years of probation, conditioned upon respondent’s attendance at Trust Accounting School, reconciliation of his trust account by a CPA, and no resulting evidence of improper accounting.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Conse *799 quently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, the parties have stipulated that respondent failed to properly supervise Ms. Adducci, which allowed her to embezzle approximately $15,000 from his trust account. These facts support a finding that respondent violated Rules 5.3 and 8.4(a) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high | ^standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Ms. Adducci’s embezzlement occurred over a period of five months, during which respondent was ill. During the latter part of this time period, respondent was unable to come into the office due to said illness. Furthermore, he believed the procedures he had established with the Carbo firm would prevent theft by his employees. Immediately upon learning that Ms. Adduc-ci’s embezzlement resulted in the misappropriation of client funds, respondent paid restitution to all effected clients.
The record supports a finding that respondent acted negligently in violating duties owed to his clients. His neglect caused actual harm to his clients; however, the harm was rectified through his timely restitution efforts. We agree with the hearing committee and the disciplinary board that the baseline sanction is suspension.
The record supports only one aggravating factor, that being respondent’s substantial experience in the practice of law. The mitigating factors found by the board are also supported by the record.
We addressed a similar fact situation in In re: Charles, 05-1971 (La.12/9/05), 916 So.2d 117, wherein a lawyer failed to supervise a non-lawyer employee who embezzled client funds. For Charles’ negligence in failing to supervise the employee, as well as other misconduct, we imposed a one year and one day suspension, fully deferred, pursuant to a petition for consent discipline. The fully deferred suspension |nwas subject to Charles’ successful completion of a two-year period of supervised probation governed by the conditions set forth in the petition for consent discipline.
In the instant matter, respondent has made full restitution to all clients to whom monies were owed. The amount of the funds embezzled was relatively small, and the embezzlement occurred in a relatively short time period, during which respondent was ill. Furthermore, respondent has no prior disciplinary history.
Given the similarities between Charles and the instant case, we find a similar sanction as that imposed in Charles is warranted in this case. Accordingly, we *800 will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for one year and one day, fully deferred, subject to two years of probation with the conditions set forth in the board’s report.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that John T. Bennett, Louisiana Bar Roll number 2953, be and he hereby is suspended from the practice of law for one year and one day. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a two-year period of unsupervised probation governed by the conditions set forth in the disciplinary board’s report. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in | ^accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KNOLL, J., dissents and assigns reasons.

 Chief Justice Kimball not participating in the opinion.

. In the summer of 2006, respondent learned that Ms. Adducci's previous employer had accused her of embezzling $100,000. After receiving this information, respondent informed Ms. Adducci that she was no longer allowed to handle money at his office. However, she continued to request checks from the Carbo firm.

. In July 2007, Ms. Adducci entered into an anti-theft pre-trial intervention program and agreed to pay $16,696.02 in restitution.

. The board determined that there was a lack of causation between respondent's illness and his failure to supervise because the record reflects that Ms. Adducci engaged in thirteen instances of forgery before respondent was hospitalized and missed work.