# In the Matter of the Suspension of: MICHAEL A. JOSEPH, ESQUIRE As a member of the Virgin Islands Bar

S. Ct. Civ. No. 2011-0099

Supreme Court of the Virgin Islands

March 26, 2012

493

DIANE M. RUSSELL, ESQ., St. Croix, USVI, *Attorney for Petitioner Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

MICHAEL A. JOSEPH, ESQ., St. Croix, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 26, 2012)

PER CURIAM. This matter comes before the Court on a November 10, 2011 petition filed by the St. Croix Subcommittee of the Ethics and Grievance Committee of the Virgin Islands Bar Association, which

alleges that Michael A. Joseph, Esq., has violated several provisions of the Model Rules of Professional Conduct, and recommends that this Court impose several forms of discipline, including suspending Attorney Joseph from the practice of law for a period of six months. For the reasons which follow, we grant the petition, as modified.

## I. BACKGROUND

The petition in this case arose out of a grievance filed against Attorney Joseph by two of his former clients, Jose and Maria Rivera ("the Riveras"), who had retained him to file a civil action against the Government of the Virgin Islands after a police car struck their vehicle. According to the Riveras, Attorney Joseph filed a complaint in late 1999 in the Superior Court on their behalf, which was docketed as Super. Ct. Civ. No. 360/1999 (STX), and initially told them that their case was going fine, but that they had to wait because the Government takes a long time to pay such claims. Afterwards, the Riveras contend that they attempted to speak with Attorney Joseph numerous times, but were never able to meet with him. Eventually, the Riveras discovered that, unbeknownst to them, Attorney Joseph had moved his law office, but still believed that Attorney Joseph was working on their lawsuit. Ultimately, the Riveras visited the Superior Court in late 2004 to inquire about the status of their case, and were informed that it had been dismissed on November 3, 2000 for failure to prosecute, after Attorney Joseph had failed to respond to an October 17, 2000 Order requiring the Riveras to prepare for trial within ten days.

The Riveras filed their grievance against Attorney Joseph on January 23, 2005, and the Ethics and Grievance Committee assigned an adjudicatory panel and a case investigator to the matter on February 23, 2005. On March 1, 2005, the case investigator mailed a copy of the Riveras' grievance to Attorney Joseph, and requested that Attorney Joseph submit a written response within ten days. Attorney Joseph, however, failed to respond to the grievance. Subsequently, the panel issued a notice of hearing, which scheduled an evidentiary hearing for April 18, 2006.

Attorney Joseph did not appear at the April 18, 2006 hearing. After the case investigator presented evidence that the notice of hearing had been mailed to Attorney Joseph by certified mail, the adjudicatory panel held that Attorney Joseph possessed notice of both the grievance and the

hearing, and proceeded in his absence. At the hearing, the panel heard testimony from the Riveras, who testified — consistent with their grievance — that they had met with Attorney Joseph twice, paid him a $150.00 initial retainer, and then were unable to see him afterwards and were never informed of the October 17, 2000 or November 3, 2000 Orders until their visit to the Superior Court in late 2004.

On the same day, the panel issued a memorandum of decision, which, based on the testimony of the Riveras, found, by clear and convincing evidence, that Attorney Joseph violated Rules 1.1, 1.3, 1.4, 1.16, and 8.4 of the Model Rules of Professional Conduct[1] with respect to his representation of the Riveras, and, based on evidence presented by the case investigator, that he also violated Rule 8.1(b) due to his failure to cooperate with the Committee's investigation. The panel recommended that, as a sanction for all of these ethical violations, Attorney Joseph should be suspended from the practice of law for six months, be publicly reprimanded, pay restitution to the Riveras and reimburse the Committee for the costs of the proceeding, and complete six hours of continuing legal education in ethics as a condition for reinstatement.[2]

---

[1] The American Bar Association's Model Rules of Professional Conduct are presently applicable to Virgin Islands attorneys pursuant to Supreme Court Rule 203(a), and — prior to the establishment of the Supreme Court — had been applicable through former Superior Court Rule 303(a).

[2] We note that the Committee's November 10, 2011 petition, which was filed by the Chair of the St. Croix Subcommittee, is inconsistent with the panel's April 18, 2006 memorandum of decision, in that the petition only requests that this Court impose a "suspension for a period of (6) months, public reprimand, restitution in the amount of $150.00, and successful completion of six (6) hours of continuing legal education on ethics," (Pet. 4), without referencing the fact that the memorandum of decision also provided that "Attorney Joseph shall pay the costs of this grievance, including transcription costs, in an amount to be determined by the Chair of the St. Croix Grievance Committee." (Mem. Of Dec. 6.) Notably, the Chair of the St. Croix Subcommittee was not a member of the panel that issued the April 18, 2006 memorandum of decision.

Supreme Court Rule 207 expressly provides that "[t]he Chairman shall seek such sanctions against the Respondent in the Supreme Court as determined by the Adjudicatory Panel." V.I.S.Ct.R. 207.5.3. While it is likely that the omission of the request for costs was an inadvertent technical error, we emphasize that the Chair's duties in seeking sanctions in this Court are largely ministerial, and that the Chair lacks the authority to request that this Court impose a lesser sanction or to otherwise review or alter the panel's recommendations. Therefore, to the extent any inconsistency exists between the sanctions requested in the petition and those recommended in the panel's memorandum of decision, this Court considers the memorandum of decision to represent the position of the Committee.

For reasons not clear from the record, the Committee did not request that any Virgin Islands local court adopt its recommendations until it filed the instant petition with this Court November 10, 2011.[3] In his January 5, 2012 response, Attorney Joseph contends that the Riveras had only paid him a $150.00 consultation fee and that, at the time, his normal hourly rate had been $200.00 an hour. However, Attorney Joseph states that, "out of kindness," he had "agreed to assist [the Riveras] in obtaining some sort of recovery." (Resp. 1.) Yet, Attorney Joseph alleges that he advised the Riveras "that while his time was pro bono, he was in no position to pay for an accident reconstructionist, for medical reports and opinions, for [expert witness'] fees which they required for expert discovery reports, nor [the expert witnesses'] time in court." (*Id.*) According to Attorney Joseph, the Riveras "could not furnish the necessary costs for the required reports," and, because there were "no resources for expert testimonies, it simple [sic] behooves common sense that [he] would communicate to [the Riveras] 'the case was doing good.'" (*Id.* at 2.) At no point in his response does Attorney Joseph attempt to explain his failure to appear at the April 18, 2006 hearing, or respond to the panel's findings that he never notified the Riveras that their case was called for trial or advised them that it had been dismissed for failure to prosecute.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit 4 § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent

---

[3] After 1991, but prior to establishment of the Supreme Court in 2007, the Superior Court, as the highest non-federal local court of the Virgin Islands, governed all matters related to the Virgin Islands Bar. *See Application of Moorhead*, 27 V.I. 74, 93 (V.I. Super. Ct. 1992). This Court assumed jurisdiction over bar governance matters in 2007. *See Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008).

judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted).

However, pursuant to both this Court's rules and the rules that were in effect at the time the Riveras filed their January 23, 2005 grievance,[4] the "[f]ailure to timely answer [a] grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *See In re Drew*, S. Ct. BA No. 2007-0013, 2008 V.I. Supreme LEXIS 26, *9 (V.I. June 30, 2008) (unpublished) (quoting V.I.S.CT.R. 207.1.11). Moreover — again, pursuant to current rules and the rules in effect when the Committee conducted the April 18, 2006 hearing — "[i]f the Respondent fails to appear for the Panel hearing . . . the Respondent shall be deemed to have admitted all factual allegations contained in the grievance, and to have waived his right to object to the imposition of sanctions in accordance with the Rules and the ABA's Standards for Imposing Lawyer Sanctions." *Brusch*, 49 V.I. at 417 (quoting V.I.S.CT.R. 207.3.3). Therefore, in the event this Court finds that Attorney Joseph violated

---

[4] As this Court has previously explained,

> Former Superior Court Rules 301, 303, 304, 305, 306, and 307 have been adopted and amended by the Supreme Court as Supreme Court Rules 201, 203, 204, 205, 206, and 207, respectively. *See* Promulgation Order No. 2007-0011. Inasmuch as the language of the former Superior Court Rules has been adopted, virtually verbatim, as part of the new Supreme Court Rules, our citations in this Opinion will be to the Supreme Court Rules. Rule 207 consists of the Rules of the Ethics and Grievance Committee.

*Brusch*, 49 V.I. at 412 n.2. Moreover, Supreme Court Rule 207 is modeled after the Model Rules of Disciplinary Enforcement, which had been previously applicable through former Superior Court Rule 303(a). *Id.* at 412 n.4.

Model Rule 8.1(b) when he failed to respond to the grievance or appear at the hearing, we would, with respect to all remaining violations, assume the truth of all factual claims in the Riveras' grievance and limit our review to whether those facts violate the pertinent ethical rules. *Id.* at 419.

## B. Model Rule 8.1(b)

■ "Rule 8.1 prohibits a lawyer, in connection with a disciplinary matter, from knowingly failing to respond to a lawful demand for information from a disciplinary authority." *Id.* (citing Model Rule 8.1(b)). As this Court has previously explained, an attorney who has been "provided [with] numerous opportunities to respond" to a grievance, yet who "inexplicably remain[s] silent" by failing to respond to the grievance or to appear at the adjudicatory hearing will clearly violate Rule 8.1(b). *Id.*; *cf. Drew*, 2008 V.I. Supreme LEXIS 26, at *9.

■ Here, the record reflects that the case investigator both requested a written response from Attorney Joseph on March 1, 2005 and served him with notice of the April 18, 2006 hearing, yet Attorney Joseph neither responded to the grievance nor appeared at the hearing. More significantly, in his January 5, 2012 response to the petition the Committee filed with this Court, Attorney Joseph does not even address — let alone dispute — any of the panel's factual findings with respect to the Rule 8.1(b) violation, and has not asserted that he was never served with the pertinent documents or that his due process rights were otherwise violated. Thus, clear and convincing evidence exists that Attorney Joseph violated Rule 8.1(b) when he failed to respond to the case investigator's letter and did not appear at the April 18, 2006 hearing.

## C. Remaining Ethical Violations

■ Since Attorney Joseph failed to cooperate with the Committee's investigation in violation of Rule 8.1(b), this Court must, with respect to all other charges, accept all factual allegations against Attorney Joseph as true. Nevertheless, we still possess an obligation to independently determine whether the panel correctly held that these facts constituted ethical violations. For the reasons that follow, we agree that Attorney Joseph violated Model Rules 1.1, 1.3, and 1.4, but reject the adjudicatory panel's finding that Attorney Joseph violated Model Rules 1.16 and 8.4.

### 1. *Model Rules 1.1, 1.3, and 1.4*

■■■ In its memorandum of decision, the panel found that Attorney Joseph violated Model Rules 1.1, 1.3, and 1.4 with respect to his representation of the Riveras. These rules read, in their entirety, as follows:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

MODEL RULES OF PROF'L CONDUCT R. 1.1.

> A lawyer shall act with reasonable diligence and promptness in representing a client.

MODEL RULES OF PROF'L CONDUCT R. 1.3.

> (a) A lawyer shall:
>
>> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
>> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>> (3) keep the client reasonably informed about the status of the matter;
>> (4) promptly comply with reasonable requests for information; and
>> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MODEL RULES OF PROF'L CONDUCT R. 1.4. Specifically, the panel found that Attorney Joseph violated these rules by failing to prepare for trial as required by the October 17, 2000 Order — resulting in the November 3, 2000 dismissal for failure to prosecute — and failing to communicate with

the Riveras for years, including not advising them that their case had been called for trial and subsequently dismissed.

■ We agree. In their grievance, the Riveras explain that they paid Attorney Joseph a fee to bring a lawsuit on their behalf against the Government, and thus unquestionably became his clients, who were entitled to all the attendant duties of the attorney-client relationship. *Drew*, 2008 V.I. Supreme LEXIS 26, at *11. Yet despite numerous attempts to communicate with Attorney Joseph about the status of their case, the Riveras were never able to speak with Attorney Joseph himself for several years, were never informed by Attorney Joseph when he moved his law office, and were never advised either that Super. Ct. Civ. No. 360/1999 (STX) had been set for trial or that it had been dismissed for failure to prosecute. Moreover, by not taking any action in response to the October 17, 2000 and November 3, 2000 Orders, Attorney Joseph clearly failed to provide the Riveras with the diligent and competent representation that they were entitled to receive from him. Accordingly, we sustain the panel's finding that Attorney Joseph violated Model Rules 1.1, 1.3, and 1.4.

### 2. Model Rule 1.16

■ The panel also concluded that Attorney Joseph violated Model Rule 1.16 by failing to protect the Riveras' interests upon termination of his representation.[5] But the record contains absolutely no evidence that

---

[5] Model Rule 1.16 provides, in its entirety, as follows:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the rules of professional conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;
(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(3) the client has used the lawyer's services to perpetrate a crime or fraud;

the attorney-client relationship between the Riveras and Attorney Joseph had terminated during any of the pertinent events. As Model Rule 1.16 itself recognizes, a lawyer may only unilaterally terminate the attorney-client relationship in a very narrow set of circumstances — none of which are present in this case — and even then, the lawyer must obtain permission from the court if the attorney wishes to unilaterally withdraw in the midst of pending litigation. *See* MODEL RULES OF PROF'L CONDUCT R. 1.16(b)-(c). While some jurisdictions have held that, in the absence of a more specific agreement, the attorney-client relationship automatically terminates upon entry of a final judgment, *see, e.g., Lundberg v. Backman*, 11 Utah 2d 330, 358 P.2d 987, 989 (Utah 1961), courts have held that, if it is the lawyer who purports to unilaterally abandon the attorney-client relationship, the relationship cannot actually end if the client does not receive notice of the termination or otherwise possesses a reasonable expectation of continued representation. *See, e.g., Hipple v. McFadden*, 161 Wn. App. 550, 255 P.3d 730, 734 (Wash. Ct. App. 2011); *Gonzalez v. Kalu*, 140 Cal. App. 4th 21, 43 Cal. Rptr.3d 866, 872 (Cal. Ct. App. 2006); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 750 N.E.2d 67, 72-73, 726 N.Y.S.2d 365 (N.Y. 2001).

 In this case, the record contains no evidence that Attorney Joseph made any attempt to withdraw as counsel to the Riveras, or that the

---

(4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

MODEL RULES OF PROF'L CONDUCT R. 1.16.

Riveras ever terminated Attorney Joseph's services. On the contrary, the Riveras clearly articulate in their grievance that, until they discovered the November 3, 2000 Order in late 2004, they believed that Super. Ct. Civ. No. 360/1999 (STX) remained pending and that Attorney Joseph was at all times acting as their lawyer. Therefore, while Attorney Joseph's conduct with respect to his representation of the Riveras violated Model Rules 1.1, 1.3, and 1.4, the very fact that an attorney-client relationship continued to exist precludes us from holding that Attorney Joseph also violated Model Rule 1.16.

### 3. *Model Rule 8.4*

Finally, the panel found in its memorandum of decision that Attorney Joseph violated Model Rule 8.4 by making misrepresentations to the Riveras. This provision provides, in its entirety, as follows:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

MODEL RULES OF PROF'L CONDUCT R. 8.4. Although not fully clear from its memorandum of decision, it appears that the panel concluded that Attorney Joseph violated Model Rule 8.4 based on its finding that the Riveras "visited Attorney Joseph's office on many occasions, seeking to see Attorney Joseph and to learn about the status of their civil case," but "were told on each occasion that the case was progressing in court."

We cannot conclude that the factual allegations in the grievance, even if accepted as true, establish a violation of Model Rule 8.4. We

503

recognize that the Riveras, in their grievance, state that they "were told that the case was going fine" by Attorney Joseph's staff and that they "shouldn't worry because he was working on our case." (Griev. 1.) Such representations to the Riveras, had they been made after the November 3, 2000 dismissal, would likely have violated Model Rule 8.4, even if relayed by a secretary or other staff member rather than by Attorney Joseph himself. *See* MODEL RULES OF PROF'L CONDUCT R. 8.4 cmt. 1; *In re Bennett*, 32 So.3d 793, 799 (La. 2010) (holding attorney guilty of violating Louisiana equivalent of Rule 8.4 for fraud committed by paralegal). Both the grievance and the memorandum of decision, however, are completely silent as to when Attorney Joseph's staff made these representations to the Riveras. Significantly, it is undisputed that — prior to the November 3, 2000 dismissal — the case had been actively litigated, as demonstrated by the October 17, 2000 Order instructing Attorney Joseph to prepare for trial. Therefore, it is quite possible, at the time these statements were made to the Riveras, that Attorney Joseph "was working on [their] case" and that the case may have in fact been "going well." Under these circumstances, we decline to hold that Attorney Joseph violated Model Rule 8.4.

### D. Appropriate Sanction

Having found that Attorney Joseph violated Model Rules 1.1, 1.3, 1.4, and 8.1, this Court must now determine the appropriate sanction. To determine the appropriate sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, in crafting the appropriate sanction, this Court is "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

504

■■■■■ As we have previously explained, the duties set forth in Model Rules 1.1, 1.3, and 1.4 are among the most important ethical duties owed by a lawyer. *Id.* at 420. Moreover, Attorney Joseph's breach of Model Rules 1.1 and 1.3 resulted in an actual injury to the Riveras, in that his failure to provide competent and diligent representation resulted in dismissal of their lawsuit. Likewise, Attorney Joseph's breach of his duty to communicate with the Riveras, in violation of Model Rule 1.4, prevented the Riveras from taking the steps necessary to mitigate the damage caused by Attorney Joseph's violation of Model Rules 1.1 and 1.3, such as appealing the November 3, 2000 Order. Under these circumstances — a serious ethical breach that resulted in actual injury, but only with respect to a single client matter — the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, either a suspension of no less than six months[6] or a public reprimand, with a suspension typically appropriate if the violation was knowing or intentional, and a public reprimand warranted if the lawyer was merely negligent. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's. 4.42(a), 4.43. But, suspension is also appropriate if "a lawyer engages in a pattern of neglect" with respect to a single matter. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.42(b). In this case, while the record contains no indication that Attorney Joseph intentionally committed the underlying misconduct with respect to his representation of the Riveras, all three ethical violations occurred over a period spanning several years, and thus warrants the higher baseline sanction of suspension.

■■■■ "An aggravating circumstance is one that may justify a more severe sanction, while a mitigating circumstance is one that may justify a more lenient sanction." *Brusch*, 49 V.I. at 422 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's. 9.21, 9.31). As the panel correctly recognized in its memorandum of decision, Attorney Joseph's violation of Model Rule 8.1 by failing to participate in the proceedings before the Committee not only prevented Attorney Joseph from bringing

---

[6] The American Bar Association's Standards for Imposing Lawyer Sanctions provide that, if a suspension is warranted, the "suspension should be for a period of time equal to or greater than six months." STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 2.3.

any mitigating factors to the panel's attention,[7] but itself constitutes an aggravating factor. *Id.* Given the absence of any mitigating factors and the presence of one aggravating factor,[8] we agree with the panel that a more serious sanction than the baseline is warranted.

▮ Nevertheless, we cannot agree with the panel that a six-month suspension, combined with a public reprimand, additional continuing legal education credits, and restitution represents an appropriate sanction. Although the panel recommended this sanction based on its conclusion that Attorney Joseph violated Model Rules 1.1, 1.3, 1.4, 1.16, 8.1, and 8.4, but this Court, for the reasons stated above, only finds that Attorney Joseph violated Model Rules 1.1, 1.3, 1.4, and 8.1. Given that the duties identified in Model Rules 1.16 and 8.4 are also among the most serious duties that a lawyer may breach, and we agree with the panel that only one aggravating factor is present, we simply cannot conclude that the sanction for violations of Model Rules 1.1, 1.3, 1.4, and 8.1 should be identical to the sanction that would have been imposed for violations of Model Rules 1.1, 1.3, 1.4, 1.16, 8.1, and 8.4, for to do so would be tantamount to this Court concluding that violations of Model Rules 1.16 and 8.4 are meaningless. Therefore, in light of the fact that the record contains insufficient evidence to support a finding that Attorney Joseph violated Model Rules 1.16 and 8.4, we shall reduce the recommended length of Attorney Joseph's suspension from six months to a suspension of three-months.

---

[7] Moreover, Attorney Joseph's January 5, 2012 response to the Committee's petition did not set forth any mitigating factors or otherwise challenge the panel's recommended sanction. Rather, the response simply argued that Attorney Joseph committed no ethical violations with respect to his representation of the Riveras.

[8] We note that, at the time the Committee filed its petition, Attorney Joseph possessed a history of prior discipline, in that on December 2, 2011, the Committee publicly reprimanded Attorney Joseph for violating Model Rules 1.1, 1.4, and 8.1 in conjunction with his representation of Johnny Martinez, as well as Model Rule 8.1 for his failure to cooperate with the panel investigating Martinez's grievance. According to the October 24, 2011 notice of public reprimand, Martinez had retained Attorney Joseph to prosecute a criminal appeal on his behalf and, although he was paid $5,000.00 to do so, Attorney Joseph "failed to file an appeal on behalf of [Martinez]" and, "[d]espite numerous requests by [Martinez] and [Martinez's] family members, [he] failed to return the funds and failed to provide an accounting of money paid." However, since this history of prior discipline did not exist at the time the Committee issued its memorandum of decision, we decline to consider this as an aggravating factor.

## III. CONCLUSION

This Court shall suspend Attorney Joseph from the practice of law for three months, and order him to complete six continuing legal education credit hours in the field of legal ethics, in addition to the continuing legal education hours he must complete to satisfy his obligation under Supreme Court Rule 208. Furthermore, the Committee shall publicly reprimand Attorney Joseph in a manner consistent with Supreme Court Rule 207.4.3(d).

We also agree that Attorney Joseph should reimburse the Riveras, but find that the amount recommended by the panel — $150.00 — is inadequate, given that the Riveras paid the consultation fee in 1999 and should be entitled to receive reasonable interest on that amount, based on the same rate used to calculate prejudgment interest in Superior Court proceedings. *See* 5 V.I.C. § 426(a). Moreover, although we also agree that Attorney Joseph should pay the costs associated with the grievance, the Committee has not provided this Court with an itemized list of expenses, and thus it is not possible for this Court to memorialize a particular cost amount. Therefore, we shall direct the Committee, through the Chair of the St. Croix Subcommittee, to calculate the amount of interest due to the Riveras and identify the expenses associated with this hearing, and to provide both figures to this Court.

After receiving this information from the Committee, this Court shall issue a final suspension order, which will be effective fifteen days after its issuance in order to provide Attorney Joseph with an opportunity to comply with Supreme Court Rule 207.5.5, including notifying all clients of his suspension and filing motions to withdraw as counsel in all pending matters. Upon expiration of this fifteen day period, Disciplinary Counsel shall confer with Attorney Joseph to ascertain that all clients, so desiring, have secured new counsel and to determine if any additional action is required to safeguard their interests during his suspension. Upon expiration of the three-month period, Attorney Joseph may petition for re-instatement in accordance with Supreme Court Rule 203(h).