# IN THE MATTER OF THE SUSPENSION OF ELMO A. ADAMS, JR., ESQUIRE AS A MEMBER OF THE VIRGIN ISLANDS BAR

S. Ct. Civ. No. 2013-0013

Supreme Court of the Virgin Islands

April 11, 2013

356

ELMO A. ADAMS, JR., ESQ., St. Thomas, USVI, *Pro se.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *For Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

DELPHINE FARR JANEY, ESQ., Disciplinary Counsel, St. Thomas, USVI, *For Office of Disciplinary Counsel.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 11, 2013)

PER CURIAM. This matter is before the Court pursuant to a February 21, 2013 petition filed by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court approve its recommendation to, among other things, suspend Elmo A. Adams, Jr., from the practice of law in the Virgin Islands until and unless he pays, in full, the judgment entered against him in *Allen v. Adams*, Super. Ct. Civ. No. 411/2005 (STT). Also before this Court is Adams's March 19, 2013 response to the petition — stating that he is voluntarily resigning from the Virgin Islands Bar — as well as Disciplinary Counsel's April 2, 2013 opposition to his attempted resignation. For the reasons that follow, we hold that Adams's purported resignation is ineffective and adopt the

EGC's recommendations as to the ethical violations, but modify its recommended sanction.

## I. BACKGROUND

Randolph Allen retained Adams to prosecute a lawsuit on his behalf relating to a condominium development project. Adams filed the complaint on July 5, 1996, naming VIC (V.I.) Ltd. and First Manhattan Development Corporation as the defendants. However, VIC subsequently moved to quash service of process on the grounds that the individual served — Thomas O'Keefe — was not its managing or general agent. The Superior Court,[1] in a January 3, 1997 Order, found that the record contained insufficient evidence to determine whether or not service was proper, and directed Allen, within ten days, to file proof that O'Keefe is VIC's managing or general agent.

Adams failed to file a response to the January 3, 1997 Order on Allen's behalf. More than a year later, the Superior Court, in a January 8, 1998 Order, noted that Allen never filed proof that O'Keefe was a proper person to serve on behalf of VIC, observed that the record contained no evidence that First Manhattan Development Corporation had ever been served, and advised Allen that the case would be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) if service was not perfected within thirty days. Again, Adams failed to file any documents on Allen's behalf. Thus, in a September 2, 1998 Order, the Superior Court dismissed Allen's complaint without prejudice for failure to serve either defendant.

Notwithstanding the September 2, 1998 Order, Adams continued to represent to Allen, for a number of years, that the matter remained pending. Frustrated with a lack of progress, Allen eventually hired another attorney to investigate the matter. In a December 30, 2004 letter, that attorney informed Allen that his case had been dismissed without prejudice on September 2, 1998, and that even though his complaint could have been re-filed, the statute of limitations for his claims had lapsed in 2001.

---

[1] Prior to October 29, 2004, the Superior Court of the Virgin Islands had been known as the Territorial Court of the Virgin Islands. Nevertheless, for convenience we refer to the former Territorial Court as the Superior Court. *See* Act No. 6687, § 1(b) (V.I. Reg. Sess. 2004) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of courts of local jurisdiction in the U.S. Virgin Islands, effective October 29, 2004).

In July 2005, Allen commenced a *pro se* lawsuit against Adams, docketed as Super. Ct. Civ. No. 411/2005 (STT), asserting causes of action for breach of contract, breach of fiduciary duty, and legal malpractice. On August 1, 2005, Allen also filed a grievance with the EGC. The EGC served Adams with the grievance on November 8, 2005, and directed him to respond within thirty days. Adams, however, failed to submit a response. The case investigator assigned to the matter sent a letter to Adams, dated October 20, 2006, informing him that his response had been due on December 8, 2005, and advising him to promptly file a response because his failure to do so may violate Model Rule of Professional Conduct 8.1(b).

When Adams failed to respond to the October 20, 2006 letter, the matter remained dormant for several years until the newly established Office of Disciplinary Counsel assumed all investigative and prosecutorial duties from the case investigator. On December 15, 2011, the EGC issued a Notice of No Hearing pursuant to Supreme Court Rule 207.3.1(b), which set forth what the EGC believed were uncontested facts, and which stated that the EGC believed the matter could be resolved based on the record without a hearing. The Notice of No Hearing identified Model Rules 1.3, 1.4, and 8.1(b) as the ethical rules implicated by the uncontested facts, and directed Adams and Allen to notify the EGC in writing within twenty days if they believed the facts are contested or that a hearing should otherwise be held. Yet again, Adams failed to submit a response. At some unspecified point during the proceedings, the EGC discovered that Allen succeeded in his lawsuit and obtained a judgment against Adams, which Adams had not yet paid.

On July 25, 2012, the EGC issued a decision holding that clear and convincing evidence existed to establish that Adams violated Model Rules 1.3, 1.4, and 8.1(b). As to the sanction for this misconduct, the EGC concluded that Adams should receive a public reprimand and should also be suspended from the practice of law until he pays the judgment in Super. Ct. Civ. No. 411/2005 (STT) in full.

For reasons not clear from the record, the EGC did not file a petition for this Court to confirm its July 25, 2012 disposition until February 21, 2013. In a February 25, 2013 Order, this Court established briefing deadlines. However, rather than responding to the EGC's petition, on March 19, 2013 Adams filed a document purporting to resign from the Virgin Islands Bar. On April 2, 2013, Disciplinary Counsel opposed the

resignation, arguing that Supreme Court Rule 206(c)(1), as well as this Court's prior decisions, prohibit attorneys from resigning in lieu of disciplinary proceedings.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). However, pursuant to both this Court's rules and the rules that were in effect when Allen filed his grievance, "the failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, S. Ct. Civ. No. 2012-0047, 2013 V.I. Supreme LEXIS 1, at *6 (V.I. Jan. 8, 2013) (unpublished) (quoting *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished)) (internal quotation and punctuation marks omitted).

## B. The Purported Resignation

■■ Before considering the EGC's petition on the merits, we must determine the effect of Adams's March 19, 2013 filing, in which he purportedly resigns from the Virgin Islands Bar. We agree with Disciplinary Counsel that his "resignation" lacks any legal effect, for Supreme Court Rule 206(c)(1) provides that "[a]ny member of the Bar may voluntarily resign therefrom, provided that . . . the resignation was not filed in lieu of disciplinary proceedings, suspension or disbarment." Here, the purported resignation "was in direct response" to the EGC's petition, which seeks Adams's suspension, and "does not meet the standards of an offer to consent . . . because an attorney respondent must admit to the Model Rules of Professional Conduct they have violated and submit such offer to this Court for approval."[2] *In re Drew*, 2008 V.I. Supreme LEXIS 26, at *5 (citing V.I.S.CT. R. 207.3.13(b)). Therefore, the purported resignation has no effect on Adams's membership in the Bar, and "is a nullity and has no effect on the proceeding." *Id*. 2008 V.I. Supreme LEXIS 26 at *6.

## C. Ethical Violations

■ Having rejected Adams's resignation, we now turn to the merits of the EGC's petition. Since an attorney who fails to respond to a grievance is in default, we must first determine whether the EGC correctly found that Adams violated Model Rule 8.1(b). *In re Suspension of Rogers*, S. Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79, at *7 (V.I. Oct. 26, 2012) (unpublished) (citing *In re Suspension of Joseph*, 56 V.I. 490, 499

---

[2] Adams's filing reads, in its entirety, as follows:

> Respondent hereby submits the following response to Petitioner's Petition for Order Suspending Respondent.
>
> I hereby voluntarily surrender my License and tender my resignation from the Virgin Islands Bar Integrated and the Virgin Islands Bar Association. I have not actively practice [sic] law over the past seven years and do not wish to continue in the practice of law. My decision to resign came after long and often times trying discussions and deliberation. This decision was made not because of the present action but because of dramatic changes and events that have occurred in my personal life.
>
> This decision to resign is not in any way to be interpreted as a means to not pay on the judgment against me. I do not have the heart or desire to continue the practice. I have requested that the Bar mediate a payment schedule between me and Mr. Allen. I am not in any financial condition to make significant payments but am willing to set up a reasonable payment plan.

(V.I. 2012)). Since the record reflects that the EGC served Adams with Allen's grievance and provided him with multiple opportunities to respond, yet Adams never filed an answer nor made any other effort to cooperate with the EGC's investigation, we agree with the EGC that clear and convincing evidence exists that Adams· "knowingly fail[ed] to respond to a lawful demand for information from a disciplinary authority." *Brusch*, 49 V.I. at 419 (citing MODEL RULES PROF'L CONDUCT R. 8.1(b)). And in any event, Adams's decision to respond to the petition the EGC filed in this Court by attempting to resign is itself sufficient to establish his default. *See In re Drew*, 2008 V.I. Supreme LEXIS 26, at *8 ("Drew's act of resigning is best described as an exit strategy and not a defense. . . . Accordingly, we find that Drew . . . is in default."). Consequently, we proceed as if all of the factual allegations in Allen's grievance are true,[3] and review the remainder of the EGC's decision solely "to independently determine whether the panel correctly held that these facts constituted ethical violations." *Joseph*, 56 V.I. at 499.

In its decision, the EGC concluded that Adams violated Model Rule 1.3, providing that "[a] lawyer shall act with reasonable diligence and promptness in representing a client," as well as Model Rule 1.4(a)(3), which mandates that "[a] lawyer . . . keep the client reasonably informed about the status of the matter." Unquestionably, Adams's failure to respond to the Superior Court's January 3, 1997 and January 8, 1998 Orders, as well as his failure to inform Allen of the September 2, 1998 Order dismissing his case without prejudice, violates both of these provisions. *See, e.g., In re Rogers*, 2012 V.I. Supreme LEXIS 79, at *13; *In re Joseph*, 56 V.I. at 501. Therefore, we sustain the EGC's findings that Adams violated Model Rules 1.3 and 1.4, in addition to 8.1(b).

## D. The Recommended Sanction

Since we agree with the EGC that Adams committed several ethical violations, we must now determine whether to also accept its recommended sanction. When conducting this inquiry, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the

---

[3] Given our holding that Adams is in default, we need not decide whether the judgment that Allen obtained against Adams in Super. Ct. Civ. No. 411/2005 (STT), which relates to the same underlying conduct as Allen's grievance, would preclude Adams from disputing any of the factual allegations in the grievance.

lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, in crafting the appropriate sanction, this Court is "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

■ The EGC's recommendation that this Court indefinitely suspend Adams until and unless he pays the judgment in Super. Ct. Civ. No. 411/2005 (STT) is inconsistent with the purpose of the attorney discipline system. Whether Adams pays the judgment in one day or thirty years, the risk he poses to the public, the legal system, and the legal profession from his unethical conduct remains the same. Yet the EGC has not proffered, and we cannot independently discern, how tying the length of Adams's suspension to how quickly he pays the judgment serves to protect these institutions from Adams. Rather, the proposed sanction would either act as an impermissible punishment of Adams — in the event he does not have the means to immediately pay the judgment — or would use the attorney discipline system to further Allen's private interests by granting him a *de facto* lien on Adams's law license. And while this Court considers payment of restitution when reviewing a petition for reinstatement, *see* V.I.S.CT. R. 203(h)(6), the reinstatement process is holistic, and this Court considers numerous factors, including whether the suspended attorney possesses the ability to pay. Accordingly, we reject this portion of the EGC's recommended sanction.

■ Nevertheless, while we decline to tie the length of Adams's suspension to payment of the judgment in Super. Ct. Civ. No. 411/2005 (STT), we agree with the EGC that, under the ABA Standards, a suspension is warranted. We have previously identified Model Rules 1.3 and 1.4 as "among the most important ethical duties owed by a lawyer." *In re Joseph*, 56 V.I. at 505 (citing *Brusch*, 49 V.I. at 420). We also agree

with the EGC's finding that Adams engaged in knowing misconduct. While Adams's failure to respond to the January 3, 1997 and January 8, 1998 Orders and to notify Allen of the September 2, 1998 Order could arguably be attributed to negligence, Adams's decision to continue to misrepresent to Allen, for several years, that his lawsuit remained pending was clearly willful and deliberate. And we agree with the EGC that the record reflects that Allen suffered an actual injury, since Adams's failure to respond to the January 8, 1998 Order caused the Superior Court to dismiss Allen's complaint, and his failure to timely notify Allen of the September 2, 1998 Order prevented him from re-filing his complaint within the applicable statute of limitations. "Under these circumstances — a serious, intentional ethical breach that resulted in injury, but only with respect to a single client matter — the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, a six month suspension." *In re Rogers*, 2012 V.I. Supreme LEXIS 79, at *17 (citing STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's. 2.3, 4.42(a)).

■ Having arrived at a six-month suspension as the appropriate baseline sanction, we must consider whether any factors warrant imposing greater or lesser discipline. *In re Parson*, 2013 V.I. Supreme LEXIS 1, at *12. In its decision, the EGC identified a single aggravating factor — Adams's violation of Model Rule 8.1(b) — and no mitigating factors, and we agree with its analysis.[4] Thus, as in a case involving similar misconduct, we conclude that an upward departure, in the form of a public reprimand in addition to the baseline six-month suspension from the practice of law, represents the appropriate sanction.[5] *See In re Rogers*, 2012 V.I. Supreme LEXIS 79, at *19-20 (imposing six-month suspension, public reprimand, and completion of six hours of continuing legal education).

---

[4] Since Adams explicitly stated in his March 19, 2013 filing that his decision to resign from the Bar "was made not because of the present action," we decline to view Adams's offer to resign as a mitigating factor. Moreover, by failing to file any documents with the EGC, Adams prevented the EGC from considering and weighing any mitigating factors in the first instance. *In re Parson*, 2013 V.I. Supreme LEXIS 1, at *13.

[5] Since Allen obtained a judgment against Adams in Super. Ct. Civ. No. 411/2005 (STT), we decline to independently award restitution as a sanction in this case.

## III. CONCLUSION

For the foregoing reasons, we reject Adams's purported resignation, and grant the EGC's petition, as modified. This Court suspends Adams from the practice of law for six months, effective fifteen days from the date of this decision, *see* V.I.S.CT. R. 207.5.5(a), and directs the EGC to publicly reprimand him in a manner consistent with Supreme Court Rule 207.4.3(d). Upon expiration of the six-month suspension, Adams may petition for reinstatement in accordance with Supreme Court Rule 203(h), and, if he still desires to voluntarily resign from the Virgin Islands Bar, may file the appropriate petition after successfully being granted reinstatement by this Court.