# IN THE MATTER OF THE DISBARMENT OF: WINSTON TAYLOR, ESQUIRE AS A MEMBER OF THE VIRGIN ISLANDS BAR

S. Ct. Civil Nos. 2013-0023, 2013-0016, 2013-0059

Supreme Court of the Virgin Islands

January 2, 2014

356

357

358

361

362

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee*.

BENJAMIN CURRENCE, ESQ., St. Thomas, USVI, *Attorney for Respondent Winston Taylor, Esq.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 2, 2014)

PER CURIAM. This matter is before the Court pursuant to a consolidated petition for disciplinary action filed by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court approve its recommendation to, among other things, disbar Winston Taylor, Esq. as a member of the Virgin Islands Bar. For the reasons that follow, we grant the petition.

## I. BACKGROUND

The consolidated petition arises from numerous grievances filed against Taylor, all investigated and adjudicated separately. The first grievance was filed by Nour Saramah, who retained Taylor to represent him in an immigration matter. At one point, Saramah told Taylor that he wished to return home to Jerusalem and asked how that would affect the

immigration proceeding. Taylor told Saramah that if he left the United States, his immigration case would automatically close and no further action would be required. Acting on this advice, Saramah returned to Jerusalem. However, the immigration case was subsequently set for a hearing. Taylor did not notify Saramah, but instead appeared at the hearing and indicated that he did not know Saramah's whereabouts. As a result, an order of deportation was issued. Although the EGC sent three separate notices to Taylor requesting a written response, Taylor never answered the grievance.

The second grievance, filed by Esam Almashni, also arose from an immigration matter. Although Taylor appeared with Almashni at a single hearing, Almashni never received any further communications with Taylor and was unaware of the outcome of the proceeding. When Almashni retained another attorney to conclude the matter, he discovered that he had already been ordered to leave the United States, and that the time to appeal had expired. Again, representatives from the EGC provided Taylor with three requests for a written response, and Taylor did not respond to the grievance.

Gioconda Marte filed the third grievance against Taylor. When Marte retained Taylor to represent her in an immigration matter, she informed him that she was a victim of domestic violence, and provided him with numerous documents, including a personal affidavit, police report, pictures, her birth certificate, and her passport. Marte paid Taylor $2,300. When she was unable to communicate with Taylor after a year and seven months, Marte terminated the relationship, decided to return to her home country, and demanded a partial refund and return of her personal documents. Taylor, however, informed Marte that there was no need for him to see her, that he would not return the documents, and offered her a $500 refund, which she did not accept. Although Marte terminated the representation, Taylor never provided her with an itemized list of services rendered or otherwise account for how the $2,300 had been earned. As with the other two grievances, the EGC informed Taylor of the grievance and requested a response, but Taylor failed to submit an answer.

The fourth grievance relates to a personal injury matter. After being involved in an automobile accident, Thomas Roosevelt retained Taylor in August 2006 to settle the matter with the negligent driver's insurance company. Taylor asked Roosevelt to provide him with his vehicle's registration and proof of income, which he did in September 2006. Nearly

two years passed and Taylor never contacted Roosevelt, and Roosevelt was never able to reach Taylor when he called him or visited his office. In June 2008 — one month before the statute of limitations would lapse — Taylor contacted Roosevelt and conveyed a settlement offer, representing $4,500 as compensation for personal injuries and $3,627.74 for property damage. Roosevelt accepted the offer. However, the check Roosevelt received in September 2008 was only payable for $4,500. When Roosevelt asked Taylor about the missing $3,627.74, Taylor told him that another check was forthcoming. Several months later, Roosevelt contacted the insurance company directly, and learned that it had conveyed that it would not pay the property damage claim because it had been barred by the applicable statute of limitations, since Taylor never provided it with the proof of registration it had requested within the limitations period.

Taylor did not respond to the EGC's first two requests for an answer to Roosevelt's grievance. However, on October 21, 2009, Taylor submitted a written response, albeit seven months after the deadline. In his response, Taylor attributed the late response to being unable to locate a part of the file, and stated that the property damage portion of the settlement had not been paid because it had been Roosevelt's responsibility to submit proof of vehicle registration directly to the insurance company. However, along with his response, Taylor provided copies of letters he sent to the insurance company which explicitly stated that he would shortly submit a copy of Roosevelt's vehicle registration to the insurance company. When the EGC noted the discrepancy and requested Taylor to provide evidence to support his claim that Roosevelt was responsible for the failure to provide the registration, Taylor failed to provide this additional information. However, several months later, he submitted a letter from the insurance company that reminded Taylor that the registration remained outstanding. Despite repeated requests for him to explain the discrepancy between his response and the documentation he submitted, Taylor never addressed the EGC's concerns.

On March 29, 2012, the panel assigned to Roosevelt's grievance recommended, among other things,[1] that Taylor be suspended from the practice of law for six months unless he successfully sat for and passed

---

[1] The panel also recommended that Taylor receive a reprimand and pay costs in the amount of $451.

the Multi-State Professional Responsibility Exam ("MPRE") within six months. For reasons not clear from the record, the EGC did not file a petition with this Court to confirm its recommended sanction until February 27, 2013, which this Court docketed as S. Ct. Civ. No. 2013-0016. However, shortly thereafter Disciplinary Counsel informed this Court that other grievances involving Taylor had been or were about to be fully adjudicated, and that a consolidated petition for disciplinary action would be forthcoming.

On March 20, 2013, the EGC filed a new petition for disciplinary action, docketed as S. Ct. Civ. No. 2013-0023, which sought to confirm the EGC's dispositions of the *Almashni*, *Saramah*, and *Marte* grievances. Among other things, the panel assigned to the *Almashni* matter recommended that Taylor be suspended for a year,[2] while the *Saramah* and *Marte* panels[3] both each concluded that Taylor should be disbarred.

This Court, in a March 20, 2013 Order, consolidated both petitions, and required Taylor to file his response on or before April 10, 2013. Although the April 10, 2013 deadline lapsed, Taylor has not filed any documents with this Court. Subsequently, the Clerk of this Court received notice that the March 20, 2013 Order — which had been sent to Taylor by certified mail to his last known address, *see* V.I.S.Ct.R. 207.1.8(c); V.I.S.Ct.R. 203(j) — had been "unclaimed" despite multiple attempts at delivery by the United States Postal Service. On July 25, 2013, this Court directed the EGC to provide proof that its petitions had been duly served on Taylor.

Shortly thereafter, on July 31, 2013, the EGC filed yet another petition for disciplinary action against Taylor, docketed as S. Ct. Civ. No. 2013-0059, which requested that this Court confirm its recommended dispositions in seven additional disciplinary matters. In the first of these matters — the fifth grievance in this consolidated matter — Ghizwi T. Mahmoud alleged that he retained Taylor in an immigration case and paid him $2,500 as a retainer and $5,000 to post a bond on his behalf. Taylor posted the bond in his own name, and on July 1, 2008, the bond became available for collection; however, despite repeated requests, Taylor refused to collect the money for Mahmoud. Unlike prior grievances,

---

[2] The *Almashni* panel also required Taylor to pay the costs of the proceeding. It is not clear why the panel did not require Taylor to pay restitution.

[3] In addition to the disbarment sanction, the *Marte* and *Saramah* panels in both matters recommended that Taylor pay restitution to the grievants as well as the costs of the proceeding.

however, Taylor cooperated with the Office of Disciplinary Counsel, and appeared at a March 21, 2012 hearing, where he admitted to taking no action with respect to getting the bond released. The panel, however, concluded that Taylor violated Model Rules 1.3 and 1.4, and, as a sanction, recommended a six-month suspension, together with restitution and costs.

The sixth and seventh grievances were filed separately by two of Taylor's other clients, Lawrence Murraine and Laverne Reed, but were consolidated by the EGC since they involved the same subject matter. Taylor had represented Gladys Paul in an immigration matter, who could not post a $5,000 bond on her own. Reed and Murraine each contributed money towards the bond and were identified as obligors on the bond papers, and Paul was released once the bond was posted. Eventually, Paul received a green card, and her bond was cancelled. However, as in the *Mahmoud* matter, Taylor had posted the bond in his own name, and never collected the money. Reed and Murraine sued Taylor and obtained a consent judgment in which Taylor agreed to collect and return the bond money. Taylor cooperated with Disciplinary Counsel during the course of this grievance, and appeared at a December 17, 2012 hearing, where Taylor's client file revealed that he received a check from immigration officials in August or September 2011; Taylor, however, testified to having misplaced the check, admitted to never informing Reed or Murraine of the status of the matter, and attributed his failure to communicate to a fear that Reed and Murraine would believe that he converted the funds. The panel concluded that Taylor violated Model Rules 1.1, 1.3, and 1.15(d), and recommended a six-month suspension as a sanction, along with payment of costs and restitution.

The eighth grievance, filed by Viola Wilson, proceeded on a default basis due to Taylor's failure to participate in the disciplinary proceedings. According to her grievance, Wilson had paid Taylor $770 to represent her in an immigration case, but that proceeding was apparently never commenced because Taylor never filed the pertinent documents with immigration authorities. Wilson was also repeatedly unable to reach him, and — like the grievant in *Marte* — was unable to receive original documents that she had provided to him. The panel found that Taylor violated Model Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), and 8.1(b), and recommended, as a sanction, that we impose an eight-month suspension along with payment of costs and restitution.

The ninth grievance, filed by Frank Richards, relates to a divorce case. Richards entered into a mediated settlement with his former wife on June 14, 2001, which provided that he would pay $6,000 in exchange for his ex-wife executing a quit-claim deed in his favor. Richards paid the money, and his ex-wife executed the deed and sent it to Taylor on September 24, 2001. However, over the course of several years, Richards repeatedly attempted to contact Taylor, by telephone and mail, without ever receiving a response, causing him to ultimately file his grievance. Initially, Taylor failed to respond to any of the EGC's overtures for an answer; however, on October 21, 2009 — more than two years after the grievance was filed — Taylor submitted a response stating that he had lost the quit-claim deed. The EGC held a hearing on October 16, 2010, but the panel, acting *sua sponte*, "decided to continue the matter pending a decision on the best way to secure a quitclaim deed for Mr. Richards." (Richards Dec. 1.) Thereafter, the case investigator obtained the underlying Superior Court file, "wrote to Attorney Taylor on December 10, 2010 indicating . . . that Taylor should file a Motion to Reopen the divorce case so that the deed could be issued," and mandated that Taylor "complete the specified tasks within fourteen (14) days." (*Id.*) When Taylor failed to take these actions, the case investigator "instructed Taylor to take immediate steps to remedy the deed issue within ten days," and Taylor again did not comply. (*Id.*) Once it discovered that Richards filed a *pro se* motion with the Superior Court and successfully obtained relief, the panel issued a decision concluding that Taylor violated Model Rules 1.3, 1.4, and 1.16(d) as to the underlying grievance, and Model Rule 8.1(b) as to his failure to respond. As a sanction, the EGC recommended a six-month suspension.

The final two disciplinary matters involve events that occurred in an appeal before this Court. The Superior Court appointed Taylor to represent Ashana Natasha Powell, an indigent criminal defendant. After the jury convicted her of carrying or using a dangerous weapon during a crime of violence but acquitted her of the predicate felonies, the Superior Court acquitted her of the remaining charges, based on a belief that acquittal was mandatory when a jury renders an inconsistent verdict. The People of the Virgin Islands appealed that decision to this Court. Taylor, however, did not file a brief on behalf of his client. Even after this Court *sua sponte* directed the parties to submit letter-form briefs on the issue of whether summary reversal was warranted, Taylor failed to file any documents with the Court. Thereafter, this Court reversed the Superior

Court's post-verdict acquittal. *People v. Powell*, 56 V.I. 630, 633 (V.I. 2012). On remand, the Superior Court sentenced Powell, and Taylor filed a notice of appeal. Nevertheless, despite being given numerous opportunities to do so, Taylor failed to file any documents in the second appeal. Ultimately, this Court, noting that it appeared that he abandoned the representation, relieved Taylor of the representation, appointed Gregory Adam Thorp, Esq., as Powell's new attorney, ordered Taylor to cooperate with Thorp, and referred Taylor to the EGC for further investigation. When Thorp notified this Court that Taylor failed to turn over the client file or otherwise discuss the matter with him despite numerous attempts at cooperation, we again referred Taylor's noncompliance to the EGC. After Taylor failed to respond to the EGC's requests for an answer, the panel proceeded on a default basis and issued a disposition recommending his disbarment as a sanction for violations of Model Rules 1.1, 1.3, 1.16(c),[4] 3.4(c), 8.1(b), and 8.4.

This Court, in an August 5, 2013 Order, consolidated the third petition for disciplinary action with the prior two cases, and again provided Taylor with an opportunity to respond to the consolidated petition on or before August 23, 2013. On August 15, 2013, Benjamin Currence, Esq. entered an appearance in the consolidated matter as Taylor's counsel, and requested a thirty day extension of time. This Court granted the motion, and extended the deadline for Taylor to file a consolidated response to September 23, 2013. Although this deadline has long since lapsed, neither Taylor nor Currence has filed any pleadings or documents with this Court.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

---

[4] In its disposition, the *Powell* panel stated that Taylor violated Model Rule 1.16(d), which relates to protecting a client's interests after representation is terminated and surrendering papers and unearned fees back to the client. However, since the panel's factual findings state that Taylor abandoned his client by failing to participate in either appeal despite not being relieved of his representation by any court, it appears that the panel intended to find that Taylor violated Model Rule 1.16(c), which prohibits attorneys from withdrawing as counsel when permission of the court is required.

The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually de novo, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). However, "the failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, 58 V.I. 208, 214 (V.I. 2013) (quoting *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished)) (internal quotation and punctuation marks omitted). Thus, we begin our analysis by determining whether Taylor violated Model Rule 8.1(b).

## B. Model Rule 8.1(b)

In its numerous dispositions, the EGC found that Taylor violated Model Rule 8.1(b) in the *Saramah, Almashni, Marte, Wilson, Richards, Roosevelt*, and *Powell* matters, but made no such finding with respect to the *Mahmoud, Murraine*, and *Reed* grievances. In light of the clear evidence that Taylor essentially ignored the *Saramah, Almashni, Marte, Wilson*, and *Powell* disciplinary proceedings, the EGC correctly found that Taylor violated Model Rule 8.1(b) in those matters through his complete failure to file an answer or otherwise meaningfully participate. *In re Suspension of Joseph*, 56 V.I. 490, 499 (V.I. 2012).

We disagree, however, with the EGC's conclusion that Taylor violated Model Rule 8.1(b) with respect to the *Richards* grievance. Although

Taylor filed an untimely answer to the grievance, neither the case investigator, nor the EGC acting *sua sponte*, moved to strike the answer from the record; thus, the untimely answer, without more, cannot sustain a violation of Model Rule 8.1(b). *In re Suspension of Welcome*, 58 V.I. 236, 247-48 (V.I. 2013). Therefore, the only possible grounds for the panel to have found that Taylor violated Model Rule 8.1(b) would be through his failure to comply with the demands of the case investigator that he "file a Motion to Reopen the divorce case so that the deed could be issued," and "take immediate steps to remedy the deed issue within ten days." (Richards Dec. 1.)

 We decline to hold that Taylor's failure to comply with these directives violated Model Rule 8.1(b). Model Rule 8.1(b) provides that it is an ethical violation for an attorney to "knowingly fail to respond to a *lawful demand for information* from an admissions or disciplinary authority." MODEL RULE PROF'L CONDUCT R. 8.1(b) (emphasis added). This Court created the EGC for the sole purpose of assisting it in regulating the practice of law in the Territory by investigating and adjudicating all disciplinary proceedings against Virgin Islands attorneys. *In re Rogers*, 57 V.I. 553, 563 (V.I. 2012) (citing V.I.S.CT.R. 203(k)(1)). As we have repeatedly emphasized, the attorney discipline system is not a mechanism to vindicate the private interests of an attorney's former clients. *See In re Suspension of Welcome*, 60 V.I. 242, 254 (V.I. 2013); *In re Suspension of Adams*, 58 V.I. 356, 365 (V.I. 2013). Thus, while the EGC may order restitution as a collateral sanction, such restitution is limited "solely to monies that the attorney has actually taken from the client, such as the attorney's compensation for the matter in which the ethical breach occurred." *In re Welcome*, 60 V.I. at 254 (citing *In re Suspension of Welcome*, 58 V.I. 604, 619 n.8 (V.I. 2013)). Simply put, the attorney discipline system is not a substitute for a civil suit for legal malpractice or other civil remedy. *Id.* at 254.

 In the *Richards* matter, the case investigator and the panel sought to further the private interests of the grievant to an even greater extent than we have previously encountered, for they sought to provide Richards, through the threat of imposition of Model Rule 8.1(b) sanctions, with a remedy that would not even be available to him in an ordinary civil action: ordering Taylor to file a motion, on Richards's behalf, in his

long-closed divorce case so that the Superior Court could create a new deed to replace the lost original. The purpose of the case investigator — a position since eliminated by the establishment of the Office of Disciplinary Counsel — is to investigate and prosecute claims of ethical misconduct, while the role of the EGC panel is to perform the quasi-judicial function of adjudicating those claims. Thus, in attorney discipline proceedings, the case investigator effectively serves as a prosecutor, while the panel members act as judges. Just as neither the case investigator nor a member of the panel could draft the motion to reopen for Richards or otherwise represent him in the Superior Court proceedings, *see* MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT R. 2.6(1)[5] ("[EGC] members shall refrain from taking part in any proceeding in which a judge, similarly situated, would be required to abstain."), neither the case investigator nor the panel could indirectly do so by ordering Taylor to perform these activities. Thus, since the panel's order for Taylor to resolve the deed issue was not a "lawful demand for information," MODEL RULE PROF'L CONDUCT R. 8.1(b), and in fact was outside the EGC's lawful jurisdiction, Taylor's failure to comply with those directives did not violate Model Rule 8.1(b).

■ Nevertheless, we still conclude that Taylor violated Model Rule 8.1(b) in conjunction with the proceedings in this Court, and thus we review the *Richards, Mahmoud, Murraine,* and *Reed* dispositions on a default basis. Even if an attorney answers a grievance, the failure to file an answer with this Court constitutes a violation of Model Rule 8.1(b) and — accordingly — results in default. *See In re Eichenauer-Schoenleben,* 59 V.I. 958, 966 (V.I. 2013) (citing *Parson,* 58 V.I. at 214). Accordingly, we proceed as if all of the factual allegations against Taylor, excluding naked speculation, are true. *In re Disbarment of McLaughlin,* 60 V.I. 230, 238 (V.I. 2013) (citing *Joseph v. Bureau of Corrections,* 54 V.I. 644, 649-50 (V.I. 2011)).

## C. Ethical Violations

■ Given our holding that Taylor violated Model Rule 8.1(b) with respect to all of the disciplinary proceedings, we review the underlying

---

[5] The American Bar Association's Model Rules for Lawyer Disciplinary Enforcement have been adopted by this Court to the extent not inconsistent with the procedures set forth in Supreme Court Rule 207. *See* V.I.S.CT.R. 203(a).

EGC decisions solely "to independently determine whether the panel correctly held that these facts constituted ethical violations." *Joseph*, 56 V.I. at 499. For the reasons that follow, we find that Taylor did not necessarily violate all of the ethical rules identified by the EGC, but conclude that he nevertheless committed numerous acts of misconduct.

### 1. Model Rule 1.1

■ "Model Rule 1.1 provides that '[a] lawyer shall provide competent representation to a client,' with '[c]ompetent representation requir[ing] the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.'" *Eichenauer-Schoenleben*, 59 V.I. at 968 (quoting MODEL RULE PROF'L CONDUCT R. 1.1). However, isolated acts of mere negligence, without more, will ordinarily not constitute a violation of Model Rule 1.1, even though they may potentially violate different ethical rules. *In re Suspension of Welcome*, 60 V.I. at 254-255.

■ The pertinent EGC panels found that Taylor violated Model Rule 1.1 with respect to the *Saramah, Roosevelt, Almashni, Marte, Reed, Murraine, Wilson*, and *Powell* matters. We agree that Taylor failed to provide even the bare minimum level of competent representation in the *Saramah* matter, for in that case Taylor — apparently without doing any legal research at all — advised his client that his immigration case would automatically close if he left the country. Likewise, the EGC correctly concluded that Taylor violated Model Rule 1.1 in the *Powell* matter. Unlike the facts presented in *Welcome*, Taylor's actions in the *Powell* appeal cannot be reasonably characterized as isolated or fleeting acts of mere negligence; when taken in the aggregate, it is readily apparent that Taylor lacked the knowledge or thoroughness necessary to represent a client on appeal. *Eichenauer-Schoenleben*, 59 V.I. at 968.

■ We disagree, however, that Taylor violated Model Rule 1.1 in the *Roosevelt, Almashni, Marte, Reed, Murraine*, and *Wilson* matters. As noted earlier, Murraine and Reed were never Taylor's clients, and otherwise did not receive legal advice or services from him. Moreover, the *Almashni* grievance related solely to Taylor's repeated failure to communicate, while the grievances filed by Wilson and Marte also did not challenge Taylor's competence to undertake the representation, but only complained of his failure to communicate and to return client property. And while Roosevelt's grievance alleged that Taylor did not submit the

373

pertinent documentation to the insurance company until after the statute of limitations lapsed, this omission — while potentially giving rise to a legal malpractice claim — is a single act of negligence that we have held does not constitute a violation of Model Rule 1.1. *Welcome*, 60 V.I. at 257.

### 2. *Model Rule 1.3*

Pursuant to Model Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." MODEL RULE PROF'L CONDUCT R. 1.3. The *Saramah, Roosevelt, Marte, Mahmoud, Wilson, Reed, Murraine*, and *Powell* panels all found that Taylor violated Model Rule 1.3 in conjunction with those matters. Because Model Rule 1.3 codifies a duty to a client, and Reed and Murraine were never represented by Taylor, we conclude that the EGC erred when it concluded that Taylor violated Model Rule 1.3 in those matters. However, we do not hesitate in holding that Taylor did not act with reasonable diligence in the other matters, since the facts, as set forth earlier, unquestionably establish that Taylor failed to take numerous required actions in a timely manner or otherwise neglected his obligations to his client.

### 3. *Model Rule 1.4*

Model Rule 1.4 requires that an attorney "keep the client reasonably informed about the status of the matter," and "promptly comply with reasonable requests for information" from a client. MODEL RULE PROF'L CONDUCT R. 1.4(a). The EGC found violations of Model Rule 1.4 in the *Roosevelt, Almashni, Marte, Mahmoud, Wilson*, and *Richards* matters. Since the grievants in those cases all allege that, at some point in the representation, Taylor became completely non-responsive, stopped providing updates on the progress of the case, and essentially ignored all attempts at communication, we agree with the EGC that Taylor violated Model Rule 1.4 in all of these matters.

### 4. *Model Rule 1.5*

The EGC concluded, in the *Marte* and *Wilson* cases, that Taylor violated Model Rule 1.5, which precludes a lawyer from charging unreasonable fees. Since the grievants both allege that Taylor performed no work at all, yet kept, respectively, the $2,300 and $770 fees for those

matters, his conduct constitutes the quintessential violation of Model Rule 1.5. *McLaughlin*, 60 V.I. at 238.

### 5. *Model Rules 1.15 and 1.16(d)*

██ ██ When a lawyer receives "funds or other property in which a client or third person has an interest," the lawyer "shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." MODEL RULE PROF'L CONDUCT R. 1.15(d). Additionally, "[u]pon termination of representation, a lawyer shall . . . surrender[] papers and property to which the client is entitled and refund[] any advance payment of fee or expense that has not been earned or incurred." MODEL RULE PROF'L CONDUCT R. 1.16(d). We agree with the pertinent panels that Taylor violated Model Rule 1.15(d) in the *Marte, Reed,* and *Murraine* matters, in that he failed to return to the grievants funds or other documents that were within his possession and which they were entitled to receive. Likewise, we agree with the EGC that Taylor violated Model Rule 1.16(d) in the *Marte* and *Wilson* matters when, after receiving notice from Marte and Wilson that they had terminated the attorney-client relationship, he refused to return their original documents and failed to provide an accounting of how his retainer had been earned.

### 6. *Model Rules 3.4 and 1.16(c)*

██ "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." MODEL RULE PROF'L CONDUCT R. 3.4(c). Moreover, an attorney may not unilaterally withdraw as counsel if permission of a court is required, and if such permission is not granted "shall continue representation." MODEL RULE PROF'L CONDUCT R. 1.16(c). We agree with the EGC that Taylor violated both rules in conjunction with the *Powell* matter, since the Superior Court's order of appointment, as well as Supreme Court Rule 210, expressly provided that Taylor possessed an obligation to continue to represent his client on appeal unless relieved by court order. Importantly, Taylor clearly committed a knowing violation, given that he appeared as Powell's counsel at the sentencing hearing that occurred between the two appeals, and thus should have been aware of the orders this Court issued as part of

the first appeal referencing his complete failure to file a brief or any other documents, despite being obligated to do so.

### 7. Model Rule 8.4

 The EGC also found that Taylor violated Model Rule 8.4 with respect to the *Roosevelt*, and *Saramah* matters by "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," MODEL RULE PROF'L CONDUCT R. 8.4(c), and in the *Powell* matters by "engag[ing] in conduct that is prejudicial to the administration of justice," MODEL RULE PROF'L CONDUCT R. 8.4(d). We agree that Taylor violated Model Rule 8.4(c) by (1) affirmatively concealing the circumstances that led to Roosevelt only receiving a check for $4,500, and misrepresenting that a check for the remaining $3,627.74 was forthcoming, and (2) informing a tribunal that he had no knowledge of Saramah's whereabouts, even though he was aware that Saramah had moved to Jerusalem and knew how to contact him. Likewise, Taylor's conduct in the *Powell* matters was prejudicial to the administration of justice, in that Taylor's abandonment of his client resulted in an actual delay in the adjudication of Powell's appeal, and his complete failure to turn over the client file to Thorp — or to otherwise cooperate with him — required employees of the Office of the Clerk of the Superior Court to devote their time and resources to copying the complete Superior Court case file and providing it to him.

### D. Sanctions

 Having accepted the EGC's findings that Taylor committed misconduct, we now consider the appropriate sanctions for his misconduct. When conducting this inquiry, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, in crafting the appropriate sanction, this Court is "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will

not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

Our review of the EGC's recommendation is complicated by the fact that each panel separately applied the ABA Standards to the particular grievance before it, some apparently without knowledge of the other grievances. Ideally, upon recognizing that multiple grievances had been filed against Taylor that involved substantially similar allegations of misconduct, the EGC should have consolidated the grievances and assigned them for disposition by the same panel as part of a single disciplinary proceeding. *See* V.I.S.CT.R. 207.1.12(b). Such consolidation would have reduced the possibility that piecemeal or inconsistent discipline would be imposed. Nevertheless, we shall first apply the ABA Standards to each individual case standing alone — as did the EGC — beginning with those in which the EGC recommended disbarment, since our agreement that disbarment is warranted would moot any further inquiry.

### 1. *The Saramah Grievance*

The panel assigned to Saramah's grievance, in which Taylor incorrectly advised his client that his immigration case would automatically close if he returned to Jerusalem, and then made false representations to an immigration tribunal, recommended that this Court disbar Taylor. For reasons not clear to us, the panel adopted a bifurcated approach by analyzing Taylor's violation of Model Rule 1.3 separately from his violations of Model Rules 1.1, 8.1, and 8.4. The EGC, relying on ABA Standard 4.41(c), identified disbarment as the initial baseline sanction for the Model Rule 1.3 violation because it found Taylor "engage[d] in a pattern of neglect with respect to client matters and cause[d] serious or potentially serious injury to a client." (Saramah Dec. 3.) As to the violations of Model Rules 1.1, 8.1, and 8.4, the panel identified a six-month suspension as the baseline sanction.

With respect to the next part of its analysis, the panel identified five aggravating factors: (1) "that Taylor has significant experience in the practice of law," (2) "that this grievant . . . was vulnerable at the time of the representation," (3) "that Taylor has displayed a significant pattern of ignoring the [EGC] — in this case and also in [the *Almashni* matter]," (4)

"that [Taylor] has been disciplined in the past including in [the *Roosevelt* matter]," and (5) that Taylor engaged in "a bad faith obstruction of the disciplinary proceeding by [his] intentional failure to comply with the rules of the [EGC] and Supreme Court Rule 207," including his failure to appear at the evidentiary hearing. (Saramah Dec. 3-4.) Based on these findings, the panel concluded that disbarment remained the appropriate sanction for the Model Rule 1.3 violation, while the Model Rule 1.1, 8.1, and 8.4 violations justified a two-year suspension. However, the panel held, in the alternative, that if this Court found that suspension represented the correct baseline sanction for the Model Rule 1.3 violation, that the aggravating factors nevertheless warranted an upward departure to disbarment.

 We disagree with the panel that disbarment represents the appropriate baseline sanction. In its decision, the panel identified the breach of duty as serious, found that Taylor acted negligently, and that Saramah suffered an actual injury. While the panel invoked ABA Standard 4.41(c) for the proposition that disbarment represented the appropriate baseline sanction, that standard provides that "[d]isbarment is generally appropriate when . . . a lawyer engages in a *pattern of neglect* with respect to *client matters* and causes serious or potentially serious injury to a client." STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.41(c) (emphases added). But only one client matter was implicated by this grievance — Saramah's immigration case — and only a single incident of neglect occurred. As we have previously held, the ABA Standards provide that a public reprimand represents the appropriate baseline sanction if a lawyer's lack of diligence — a serious ethical breach — results in actual injury, but the lawyer acted negligently rather than knowingly. *Joseph*, 56 V.I. at 505; *see also* STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.43 ("Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.").

The same holds true when a lawyer causes an actual injury through a breach of the duty of competence — again, a serious ethical breach — but only acted negligently. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.53(a) ("Reprimand is generally appropriate when a lawyer . . . demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client."). While the

378

panel cites to ABA Standard 4.42 to support its holding that suspension represented an appropriate baseline sanction for the Model Rule 1.1 violation, this provision requires that the attorney act "knowingly," and we cannot determine, from this record, that Taylor knowingly provided incorrect legal advice.

■ Nevertheless, we agree with the panel that suspension represents the appropriate baseline sanction for Taylor's violation of Model Rule 8.4. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 7.2. In this case, the record established that Taylor falsely represented to the immigration tribunal that he did not know Saramah's whereabouts, despite Saramah having told Taylor that he had moved to Jerusalem.

Having identified suspension as the appropriate baseline sanction, we now consider whether any aggravating or mitigating factors warrant an upward or downward departure. We agree with the panel that, as a result of his non-participation, Taylor failed to meet his burden of establishing any mitigating factors that may justify leniency for his misconduct. *Parson*, 58 V.I. at 217. However, we find the panel committed several errors in its consideration of aggravating factors. Although we agree that Taylor's violation of Model Rule 8.1(b) constituted an aggravating factor, the panel identified Taylor's "pattern of ignoring the [EGC]" and "intentional failure to comply with rules of the [EGC] and Supreme Court Rule 207" as separate aggravating factors. Essentially, the panel treated a single aggravating factor — violating Model Rule 8.1(b) — as two aggravating factors.

■ We are also troubled by the *Saramah* panel's consideration of events that occurred in the *Roosevelt* and *Almashni* matters. As we emphasized earlier, the EGC never consolidated these grievances. Consequently, we can find no basis, in our prior decisions, the ABA Standards, or Supreme Court Rule 207, for the panel to essentially take judicial notice of Taylor's failure to cooperate with the *Roosevelt* and *Almashni* investigations and treat such failure as an aggravating factor when fashioning the appropriate sanction for his misconduct in the

otherwise-unrelated *Saramah* matter.[6] Moreover, the decisions rendered by the *Roosevelt* and *Almashni* panels, while bringing finality to the proceedings before the EGC, lacked any legal effect, since both panels recommended sanctions that require the approval of this Court, which necessitates that we exercise our independent review to not only review the proposed sanction, but the EGC's findings of misconduct. Given the non-finality of those decisions, the *Saramah* panel erred when it relied on them to support its conclusion that Taylor possessed a prior history of discipline.

■■ ■■ We also conclude that the EGC committed error in characterizing Saramah as a "vulnerable" victim solely because he "was vulnerable at the time of representation" since he had been "taken into custody by immigration officials." (Saramah Dec. 3.) Adopting such a broad definition of "vulnerable" would essentially establish a *per se* rule that all clients involuntarily detained in criminal, immigration, and similar matters are vulnerable for purposes of ABA Standard 9.22(h). Rather, we agree with the courts that have held that, to warrant aggravation, the client must suffer from a physical or mental disability or some comparable trait that renders him *particularly* vulnerable to an unethical lawyer. *In re Welcome*, 58 V.I. at 617-18. *See also In re Carmick*, 146 Wn.2d 582, 48 P.3d 311, 323 (2002); *In re Hickox*, 57 P.3d 403, 406 (Colo. 2002).

■■ Additionally, we can find no evidentiary basis to support the panel's finding "that Taylor has significant experience in the practice of law." (Saramah Dec. 3.) A finding of substantial experience, like all other aggravating factors, will only be sustained if there is evidence in the record to support such a finding. *In re Graham*, 841 So.2d 707, 709-10 (La. 2003). The panel's decision does not point to any evidence in the record to support this finding, and, in our own independent review, we can find none.

■■ We do, however, find that the evidence also supports an additional aggravating factor. Pursuant to ABA Standard 9.22(d), multiple violations

---

[6] Of course, since all these grievances have been brought before this Court as part of a single consolidated proceeding, we ultimately must consider Taylor's actions in all of these cases to determine what aggregate sanction to impose. STD'S FOR IMPOSING LAWYER SANCTIONS § II (explaining that while "[t]he [S]tandards do not account for multiple charges of misconduct," either "a pattern of misconduct or multiple instances of misconduct should be considered as aggravating factors").

of ethical rules constitute an aggravating factor. In this case, Taylor's ethical violations did not result from a single act or omission that happened to violate multiple ethical rules. Rather, the record reflects that Taylor violated Model Rule 1.1 by telling Saramah that his immigration case would automatically close if he left the United States, separately violated Model Rule 1.3 by failing to inform Saramah that the matter had been set for a hearing, and then separately violated Model Rule 8.4 by representing at the hearing that he did not know Saramah's whereabouts, even though he knew he had returned to Jerusalem.

Under these circumstances, we conclude that a six-month suspension represents the initial baseline sanction for Taylor's misconduct in the *Saramah* matter. However, due to the presence of two serious aggravating factors, a one-year suspension represents the appropriate sanction.

### 2. *The Marte Grievance*

In the *Marte* matter, where Taylor failed to refund unearned fees and return a passport and other original documents after the termination of representation, the panel identified disbarment as the initial baseline sanction. We agree with the EGC's findings that Taylor breached serious ethical duties and caused an actual injury. Moreover, we agree with the EGC that Taylor engaged in intentional, rather than negligent, misconduct, since the record reflects that he proactively refused to return Marte's passport and other documents, and only offered a partial $500 refund without providing any sort of accounting. The EGC acknowledged that these findings — an intentional breach of a serious duty that results in actual injury — ordinarily warrant suspension as a baseline sanction pursuant to ABA Standards 4.12 and 7.2. However, the EGC believed that ABA Standards 4.41(b) and (c) were applicable, and thus identified disbarment as the baseline sanction.

 We disagree. As explained above in the context of Saramah's grievance, ABA Standard 4.41(c) requires a "pattern of neglect with respect to *client matters*," and only a single client matter — Marte's grievance — was before the panel in this case. Moreover, ABA Standard 4.41(b), which provides for disbarment as a baseline sanction if "a lawyer knowingly fails to perform services for a client and causes *serious or potentially serious injury* to a client," (emphasis added), is also inapplicable. The record reflects that Marte paid Taylor $2,300, that she had retained Taylor to initiate a proceeding to try to obtain legal status in

the United States, and that she sought a refund "when she decided to go back to her country." (Marte Dec. 2.) Although Taylor refused to return her passport and original birth certificate, the record contains no evidence that the injury Marte suffered as a result of Taylor's misconduct was as serious as to rise to the level of disbarment as a baseline sanction. Because disbarment represents the most serious sanction available, in conversion cases it is generally reserved for instances where "the magnitude or the duration of the deprivation is extensive" or "the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great." *Louisiana State Bar Ass'n v. Hinrichs*, 486 So.2d 116, 120 (La. 1986). The EGC record contains no evidence concerning the degree of hardship Marte faced as a result of having to obtain a replacement passport or a certified copy of her birth certificate from the appropriate authorities in her home country, or that her failure to possess these documents at the pertinent time actually impeded her ability to travel or other substantial right. And while we recognize that a layman such as Marte may have substantial difficulty in obtaining replacement documents from another country, we emphasize that, notwithstanding Taylor's default, the EGC bears the burden of proving, by clear and convincing evidence, all the factors necessary to support its proposed sanction. *In re Disbarment of Rogers*, 60 V.I. 295 (V.I. 2013). Although the EGC, had it held a hearing to further develop the allegations in Marte's grievance, may have potentially been able to meet this burden, we cannot infer, from a naked claim that a passport and birth certificate were not returned, that "the magnitude of the duration of the deprivation is extensive" or that "the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great," so as to warrant the most serious sanction of disbarment as a baseline sanction, as opposed to suspension. *Hinrichs*, 486 So.2d at 120. Thus, while Marte clearly suffered actual injuries as a result of Taylor's misconduct, we cannot say on this record that the EGC met its burden of establishing, by clear and convincing evidence, that disbarment represents the appropriate baseline sanction.

As to aggravation, the *Marte* panel also committed several of the same errors as the *Saramah* and *Almashni* panels. It impermissibly considered the *Saramah*, *Almashni*, and *Roosevelt* decisions as proof of a prior history of discipline, despite the fact that they were all non-final by virtue of never having been approved by this Court. It also erroneously identified Marte as a "vulnerable" victim because "[s]he was a victim of

382

domestic violence, is an undocumented immigrant, and is of limited financial means," (Marte Dec. 7), without making any finding of physical or mental disability or similar characteristics that would make her particularly vulnerable. We agree, however, that Taylor's Model Rule 8.1(b) violation, as well as the fact that he committed multiple distinct acts of misconduct over a period of time, both constitute aggravating factors. Under these circumstances — a baseline sanction of a six-month suspension, with two serious aggravating factors — we conclude that an eight-month suspension is appropriate.

### 3. *The Powell Matters*

The panel considering the *Powell* matters, involving Taylor's abandonment of his client in two appeals and failure to cooperate with substitute counsel, identified disbarment as the appropriate baseline sanction. We agree with the panel that Taylor knowingly violated important ethical duties to his client through his complete failure to represent her in two appeals before this Court. Under those circumstances, either disbarment or suspension represents the appropriate baseline sanction, depending on whether the lawyer "causes serious or potentially serious injury" — in which case disbarment is warranted — or merely "causes injury or potential injury," which would only justify a suspension. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Stds. 4.41(b), 4.42(a). The EGC concluded that Taylor's conduct constituted a "serious or potentially serious injury," and thus identified disbarment as the appropriate baseline sanction.

We disagree. Although the ABA Standards do not expressly define the phrase "serious injury," the introduction prefacing the standards directs us to consider "the type of duty violated and the extent of actual or potential harm" when ascertaining "[t]he extent of the injury" at issue. STD'S FOR IMPOSING LAWYER SANCTIONS § II. "For example, in a conversion case, the injury is determined by examining the extent of the client's actual or potential loss," while "[i]n a case where a lawyer tampers with a witness, the injury is measured by evaluating the level of interference or potential interference with the legal proceeding." *Id. See also In re Martin*, 90 So.3d 392, 393 (La. 2012) (identifying complete abandonment of law practice and ongoing conversion of funds as examples of serious injuries for purposes of the ABA Standards).

In this case, we again find that the EGC failed to establish, by clear and convincing evidence, that the actual or potential injury to Powell or to the legal system is of such a magnitude as to justify the baseline sanction of disbarment. The EGC correctly notes that this Court would have been within its authority to dismiss Powell's second appeal for failure to prosecute as a result of Taylor's complete failure to file any documents, *see* V.I.S.Ct.R. 35(e), and that therefore Powell could have suffered a potentially irreparable injury. However, we note that in the Virgin Islands — unlike many other jurisdictions — convicted criminal defendants may file a petition for writ of habeas corpus at any time. *See Simon v. Joseph*, 59 V.I. 611, 626 (V.I. 2013) ("In the Virgin Islands, a criminal defendant may . . . file an unlimited number of successive habeas corpus petitions under local law, constrained only by abuse of the writ and similar common law doctrines.") (internal citations omitted). Although we agree with "the well-established principle that a writ of habeas corpus is not a substitute for a direct appeal," *Green v. State*, 374 S.W.3d 434, 439 (Tex. Crim. App. 2012), the availability of habeas corpus as a remedy does somewhat mitigate the potential injury associated with loss of a direct appeal. Notably, Taylor's complete failure to take any action with respect to Powell's appeal would have constituted *per se* ineffective assistance of counsel if this Court had elected to dismiss the appeal rather than appoint new counsel, the potential injury was not serious. *See Commonwealth v. Mikell*, 2009 PA Super 44, 968 A.2d 779, 781 (2009) ("It is well-settled that 'an accused who is deprived entirely of his right of direct appeal by counsel's failure to perfect an appeal is *per se* without the effective assistance of counsel, and is entitled to reinstatement of his direct appellate rights.'") (quoting *Commonwealth v. Johnson*, 2005 PA Super 417, 889 A.2d 620, 622 (2005)). And while we recognize that the loss of a direct appeal, even if corrected through a habeas corpus action, may still result in irreparable injury, in that a successful habeas petitioner may serve more time in prison than a defendant who pursues a successful direct appeal, the EGC failed to prove, by clear and convincing evidence, that Powell suffered such a prolonged loss of liberty as a result of Taylor's misconduct so as to warrant disbarment as the baseline sanction. *Hinrichs*, 486 So.2d at 120.

Likewise, we find that while this Court suffered an injury as a result of Taylor's ethical violations, it was not a serious one, since our rules foresee that such misconduct may occur. When Taylor failed to file a brief in the

first appeal — where Powell was the appellee — this Court resolved the government's appeal without oral argument, as provided for in Supreme Court Rule 25(c). And when Taylor failed to file any documents in the second appeal — this time brought by Powell — this Court provided Taylor with an opportunity to be heard and, when he failed to respond, simply appointed new counsel in accordance with Supreme Court Rule 210 and referred Taylor's conduct to the EGC as provided for in Supreme Court Rule 203(p). Accordingly, we conclude that a six-month suspension, rather than disbarment, represents the appropriate baseline sanction.

Turning to the next step of the *Brusch* analysis — consideration of aggravating and mitigating factors — the EGC correctly concluded that Taylor's violation of Model Rule 8.1(b) constituted an aggravating factor, and simultaneously prevented it from considering any potential mitigating factors. We also agree with the EGC that Taylor engaged in a pattern of misconduct over a substantial period of time. However, as in *Saramah* and *Marte*, we find that the record contains no evidence to establish that Taylor possessed substantial experience in the practice of law, and that the panel erred by considering the non-final dispositions in other grievances as the sole basis for its holding that Taylor has a prior history of discipline. However, while we find that only two aggravating factors are present in this case, we conclude that, given their seriousness, as well as the nature of the underlying misconduct, that a substantial upward departure is warranted, in the form of an 18-month suspension from the practice of law.

### 4. The Almashni Grievance

Having concluded that disbarment does not represent the appropriate sanction for the *Saramah*, *Marte*, or *Powell* misconduct — standing alone — we turn to the remaining grievances. In the *Almashni* case, where he completely ceased all communications with his client and failed to inform him that he had been ordered to leave the United States, Taylor violated Model Rules 1.4(a) and 8.1(b). Like the *Saramah* panel, it relied on ABA Standards 4.42 and 7.2 to support its conclusion that a six-month suspension represented the appropriate baseline sanction. However, the panel expressly found that Taylor — who violated Model Rule 1.4(a) by failing to inform Almashni that he had been ordered to leave the United States — had engaged in "neglectful behavior." (Almashni Dec. 3.) And

while this case bears some similarities to *Saramah*, we note that, unlike *Saramah* — where Taylor made an affirmative misrepresentation to a tribunal — there is no evidence that Taylor acted intentionally. Therefore, the appropriate baseline sanction in this case — a serious breach of duty that caused injury, but with a neglectful rather than knowing or willful state of mind — is a public reprimand. *Joseph*, 56 V.I. at 505; *see also* STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.43.

 The panel in this case also made virtually identical errors in its analysis of the aggravating factors. As in *Saramah*, the panel (1) erroneously classified Almashni as a "vulnerable" victim solely because he did not speak English, *see In re Christopher*, 153 Wn.2d 669, 105 P.3d 976, 982 (2005) ("[C]lients who have cultural and language barriers, are not vulnerable victims absent a showing of physical or mental disability or other characteristic that renders them 'particularly vulnerable.' "); (2) impermissibly relied on the non-final *Roosevelt* decision to find a prior history of discipline; and (3) found that Taylor possessed "significant experience in the practice of law" despite the absence of any record evidence to support this finding. Moreover, unlike *Saramah*, the panel identified commission of multiple violations as an aggravating factor; however, in light of our conclusion that Taylor only violated Model Rule 1.4(a), and not Model Rule 1.1, through his failure to notify Almashni that his case had been decided and that he was required to leave the United States, this factor is not present. Consequently, we find that only a single aggravating factor — Taylor's violation of Model Rule 8.1(b) — is present in this case. In light of this aggravating factor and the absence of any mitigating factors, we conclude that a six-month suspension represents an appropriate upward departure from the baseline sanction of a public reprimand. *See Joseph*, 56 V.I. at 506.

### 5. The Roosevelt Grievance

We now turn to the *Roosevelt* grievance, in which the panel recommends that this Court impose a six-month suspension as a sanction for Taylor's failure to consummate a settlement and subsequent false representations to his client. Unfortunately, unlike the other panels, the *Roosevelt* panel does not explain how it arrived at its recommended sanction. Rather, its decision simply invokes ABA Standards 4.1, 4.4, and 4.6 — without citing to any particular subpart — and makes no findings with respect to (1) the baseline sanction itself, (2) any of the factors that

386

a panel must consider to identify the baseline sanction, or (3) what aggravating and mitigating factors, if any, may warrant an upward or downward departure from the baseline.

■■■ Ordinarily, when faced with such a cursory disposition, this Court would remand the matter to the EGC so that it may make the appropriate findings and apply the ABA Standards in the first instance. *Welcome*, 58 V.I. at 259. Nevertheless, since we exercise plenary review without affording the EGC's findings any special deference, "this Court is not mandated to remand this matter to the EGC." *Id.* Since the EGC applied — albeit erroneously — the ABA Standards in the other matters, as well as the fact that the EGC requests that we impose a consolidated sanction for all grievances, we shall, in the interests of expediting a decision, exercise our discretion to do what the EGC should have done, and apply the ABA Standards to identify the appropriate sanction for Taylor's misconduct in the *Roosevelt* matter. *See McLaughlin*, 60 V.I. at 240 (in order to "further the interests of judicial economy," this Court may perform an analysis that the EGC would ordinarily be required to perform on remand, in an "extraordinary circumstance").

In this case, Taylor violated among the most important ethical duties a lawyer owes to his client. *Joseph*, 56 V.I. at 505. Taylor's actions caused an actual injury to Roosevelt, in that he lost an additional $3,627.74 in settlement proceeds that he would have otherwise received had Taylor communicated with the insurance company in a timely manner. Moreover, the record reflects that Taylor's ethical violations were not the result of mere negligence. Although his initial failure to provide proof of vehicle registration to the insurance company could arguably have been negligent, Taylor's decision to misrepresent to Roosevelt that a second check from the insurance company was forthcoming was unquestionably a willful and deliberate act designed to both mislead Roosevelt and to cover up his own misconduct. *In re Suspension of Adams*, 58 V.I. at 365. "Under these circumstances — a serious, intentional ethical breach that resulted in injury, but only with respect to a single client matter — the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, a six month suspension." *In re Rogers*, S. Ct. Civ. No. 2012-0042, -0059, 2012 V.I. Supreme LEXIS 79, at *17 (V.I. Oct. 26, 2012) (unpublished) (citing STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 2.3, and § II.C., Std. 4.42(a)).

With respect to aggravating and mitigating factors, Taylor's violation of Model Rule 8.1(b), in addition to serving as an aggravating factor in its own right, prevented the EGC from considering any potential mitigating factors. And since Taylor's misconduct arose as a result of separate discrete acts and omissions committed over a period of time, aggravation is also warranted pursuant to ABA Standard 9.22(d). Moreover, prior to ending his limited cooperation with the EGC, Taylor told the EGC that Roosevelt — and not Taylor — was required to provide proof of registration to the insurance company; this claim, however, was proven false by the other documents Taylor provided to the EGC. In fact, Taylor ended his cooperation with the EGC once it brought the discrepancy between his answer and the documentary evidence to his attention. Consequently, Taylor provided false statements to the EGC. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 9.22(f). Given the presence of three aggravating factors, we conclude that a one-year suspension represents the appropriate sanction as to the *Roosevelt* matter.

### 6. The Mahmoud, Murraine, and Reed Grievances

Since the *Mahmoud, Murraine,* and *Reed* matters involve essentially the same misconduct — failure to return monies used to post a release bond — we analyze them in tandem. The *Mahmoud* panel and the panel that considered the consolidated *Murraine* and *Reed* grievances each separately identified a six-month suspension as the appropriate baseline sanction, and we agree with their analyses, given that Taylor breached important duties owed to the grievants and — based on his own testimony in the respective hearings — clearly acted intentionally. Likewise, both panels correctly found no mitigating factors, and multiple aggravating factors, including the absence of any remorse and refusal to make any restitution. Given the presence of these aggravating factors, we conclude that a slight upward departure from the baseline sanction, in the form of an eight-month suspension, is warranted as a sanction in each case.

### 7. The Wilson Grievance

As explained above, the *Wilson* grievance involved virtually identical misconduct as the *Marte* grievance, in that Taylor failed to return the grievant's original documents or refund unearned fees after being fired by his client. However, unlike the *Marte* panel — which erroneously recommended disbarment — the *Wilson* panel correctly identified a

six-month suspension as the appropriate baseline sanction after recognizing that Taylor committed a knowing breach of serious ethical duties with respect to a single client. Although the panel erred by considering the non-final dispositions in Taylor's other disciplinary matters as an aggravating factor, it committed an equivalent error by failing to consider Taylor's violation of Model Rule 8.1(b) as an aggravating factor. Consequently, we agree with the panel that a slight departure from the baseline sanction, in the form of an eight-month suspension, is warranted.

### 8. The Richards Grievance

The *Richards* panel identified a six-month suspension as the baseline sanction because Taylor committed a serious ethical breach that resulted in an actual injury to a single client. While it found, in aggravation, that Taylor violated Model Rule 8.1(b) — a finding which, as described above, we have set aside — it also found a mitigating factor, in that Taylor eventually acknowledged the wrongfulness of his conduct, and consequently found that the aggravating and mitigating factors offset each other. However, the panel also ignored another obvious aggravating factor: that Taylor engaged in multiple, separate ethical violations over a substantial period of time. STD's FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 9.22(d). Consequently, we agree that the aggravating and mitigating factors offset each other, and conclude that a six-month suspension represents the appropriate sanction.

### 9. The Appropriate Aggregate Sanction

■ The appropriate sanctions for the *Saramah, Almashni, Marte, Roosevelt, Mahmoud, Reed, Murraine, Wilson, Richards,* and *Powell* matters, when aggregated, total an 84-month — or seven year — suspension from the practice of law. But this does not end our inquiry. Although "[t]he standards do not account for multiple charges of misconduct," they do provide that in such instances "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct," and "might well be and *generally should be* greater. . . ." STD's FOR IMPOSING LAWYER SANCTIONS § II (emphasis added). Thus, in a case such as this, where separate EGC panels have engaged in piecemeal discipline, we continue our inquiry by beginning with the aggregate period of suspension as the baseline

389

sanction,[7] and determine whether any aggravating or mitigating factors, while not necessarily considered with respect to the individual grievances, warrant an upward or downward departure.

In this case, an upward departure to disbarment is unquestionably warranted. First, we note that aggregate baseline sanction in this case is a seven year suspension, while this Court's rules provide that suspensions from the practice of law should not exceed three years. *See* V.I.S.CT.R. 207.4.3(b)(II)(2). While this Court is not strictly bound by this limitation, since "Rule 207 is intended to limit the powers of the *Ethics and Grievance Committee*, not the jurisdiction of this Court," *In re Motylinski*, S. Ct. BA. Nos. 2009-0220, 2012-0106, 2013 V.I. Supreme LEXIS 10, *7 (V.I. March 14, 2013) (unpublished) (emphasis in original), we conclude that, like the "presumption against imposing an extremely short suspension as a sanction," *In re Welcome*, 58 V.I. at 257, lengthy suspensions far in excess of the presumptive three year maximum are also highly disfavored.

In any event, as we explained earlier, "[d]isbarment is generally appropriate when . . . a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.41(c). While disbarment did not represent the appropriate sanction for any of the individual grievances, Taylor's conduct over all of these matters, when viewed in the aggregate, clearly establishes a pattern of negligent — and sometimes intentional — misconduct in unrelated client matters, over the span of several years, that caused serious or potentially serious injuries to clients, third parties, and the administration of justice in the Virgin Islands. Moreover, as explained in greater detail above, the record is replete with numerous aggravating factors — most notably, Taylor's failure to participate in the disciplinary proceedings despite

---

[7] We recognize that the ABA Standards, as written, may imply that the baseline sanction for aggregate misconduct should be 18 months — the sanction for the *Powell* matters — rather than 84 months. However, in this case several of the panels adjudicating the grievances were aware of the other disciplinary proceedings against Taylor, and specified that their recommended sanction should be served consecutively to any other sanctions imposed. In any case, when — as here — a respondent's misconduct stems from discrete and separate acts involving different client matters, courts generally presume that a consecutive, rather than concurrent, period of suspension is warranted. *See, e.g., In re Roman*, 601 F.3d 189, 196 (2d Cir. 2010); *In re Smead*, 2010 WI 4, 322 Wis. 2d 100, 777 N.W.2d 644, 653 (2010).

receiving numerous opportunities to do so — and virtually nothing to support mitigation. Therefore, we conclude that disbarment, the most serious sanction we can impose in an attorney discipline proceeding, represents the appropriate aggregate sanction for Taylor's repeated instances of ethical misconduct.

## III. CONCLUSION

For the foregoing reasons, we grant the EGC's petition, and disbar Taylor, effective immediately. We also order Taylor to pay restitution in the cases in which the EGC has directed payment of restitution, and to reimburse the EGC for the costs associated with these proceedings.